UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON DAGOBERTO ZELAYA ALAS,<br><br>Plaintiff,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>Defendants. | Case No. 25-cv-08774-VC<br><br>**ORDER GRANTING EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 6 |

The motion for an emergency TRO is GRANTED. Because the issues presented by the motion are time sensitive, this order assumes that the reader is familiar with the facts, the applicable laws, regulations, and legal standards, and the arguments made by the parties.

Zelaya has raised serious questions going to the merits of his claim that he is entitled to a pre-deprivation hearing before an immigration judge. First, Zelaya likely has a liberty interest in remaining free from detention. He was released from custody over five years ago. Following Zelaya's release, the government granted him work authorization and removed his ankle monitor. Over the past five years, Zelaya has been taking care of his wife who has a disability, as well as his two minor children. He has a job at a construction company and is his family's primary breadwinner. Zelaya contends that he was been complying dutifully with the terms of his release over the past five years, and the government's response does not appear to dispute that.[1]

---

[1] The government's assertion that Zelaya missed two recent ISAP check-ins is questionable, and in any event the alleged violations would be negligible in the context of five years of overall compliance.

The government argues that because Zelaya was subject to the terms of the *Zepeda Rivas* settlement, in which ICE agreed not to re-detain him for at least three years following the termination of that case, his liberty interest is conditional on the government's ability to re-detain him after the settlement term's expiration. This is not an unreasonable argument, and it was adopted in *Giorges v. Kaiser*, No. 5:25-cv-07683-NW, Dkt. No. 17 (N.D. Cal. Oct. 10, 2025). But there are serious questions about whether *Giorges* is correct. *Giorges* relied heavily on *Uc Encarnacion v. Kaiser*, No. 22-cv-04369-CRB, 2022 WL 9496434 (N.D. Cal. Oct. 14, 2022). The facts of *Uc Encarnacion* were very different from the facts in *Giorges* (or the facts here). In *Uc Encarnacion*, a determination had already been made by the relevant agency (specifically, the Board of Immigration Appeals on appeal from a decision by an Immigration Judge) that the petitioner was a danger to the community. *Id.* at *2. Here, the *Zepeda Rivas* settlement reflected a voluntary decision by ICE not to re-detain Zelaya for three years and a determination that he was not a flight risk or a danger to his community. This is arguably more analogous to a case where the agency originally decides to release a noncitizen on the ground that they're not a danger or a flight risk, only to turn around years later and arrest them without any showing of changed circumstances. *See, e.g., Pinchi v. Noem*, --- F. Supp. 3d ----, No. 25-cv-05632-PCP, 2025 WL 2084921 (N.D. Cal. July 24, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025).

Beyond this, the burden to the government of holding a bond hearing would be minimal, and the risk of erroneous deprivation is significant. *See, e.g., Duong v. Kaiser*, No. 25-CV-07598-JST, 2025 WL 2689266 (N.D. Cal. Sept. 19, 2025). This Court granted Zelaya's bail application after determining that he was not a flight risk or a danger to the community, and ICE's agreement under *Zepeda Rivas* not to re-detain him for three years reflects the same determination. *See* Dkt. No. 2-1 Ex. B; *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36 (N.D. Cal. 2020).

As to the government's argument that Zelaya can be re-detained without a hearing because his detention in mandatory under 8 U.S.C. § 1225(b)(2), the Court rejected that

2

argument in *Bastidas Mendoza v. Albarran*, No. 25-cv-08205-VC, Dkt. No. 14 (N.D. Cal. Oct. 10, 2025), and the same reasoning applies here.

The remaining TRO factors weigh heavily in Zelaya's favor. Unconstitutional deprivation of physical liberty constitutes irreparable harm. *See Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017). As for the balance of equities and the public interest factors of the TRO inquiry, these factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Zelaya's detention would prevent him from taking care of and providing for his wife and minor children. By contrast, the government's interest in detaining him until the Court can hold a preliminary injunction hearing is—at least on this record—minimal.

Accordingly, the government is ordered to release Zelaya from custody no later than 4 p.m. PT today, October 15. The government is also ordered to show cause why a preliminary injunction should not issue. A hearing on the order to show cause will be held on Wednesday, October 29, at 10:00 a.m. The government's response to the order to show cause is due Tuesday, October 21, and the petitioners' reply is due Friday, October 24.

The government is enjoined and restrained from re-detaining Zelaya until the earlier of October 29, at 5 p.m., or the time that they give Zelaya a pre-deprivation hearing before a neutral decisionmaker. The government is also enjoined and restrained from removing Zelaya from the United States.

**IT IS SO ORDERED.**

Dated: October 15, 2025

_____
VINCE CHHABRIA
United States District Judge