1  ETAN NEWMAN, ESQ. (CA SBN 308728)
   PANGEA LEGAL SERVICES
2  391 SUTTER ST., SUITE 500
   SAN FRANCISCO, CA 94108
3  TEL.  (415) 652-0907
   FAX. (415) 593-5335
4  etan@pangealegal.org

5
   *Pro Bono Attorney for Petitioner*
6

7

8                  **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
9                      **SAN JOSE DIVISION**

10  ████████ ███████████ █████████ ██████████
    a.k.a.
11  ███████ ████████████ █████ █████████

12                        *Petitioner*,          Case No.: 5:25-cv-8774

13                 v.                         **VERIFIED PETITION FOR**
                                              **WRIT OF HABEAS CORPUS**
14  SERGIO ALBARRAN, Field Office Director
15  of the San Francisco Field Office of       **IMMIGRATION HABEAS CASE**
    U.S. Immigration and Customs Enforcement;
16  TODD M. LYONS, Acting Director of
    U.S. Immigration and Customs Enforcement;
17  KRISTI NOEM, Secretary of the U.S.
    Department of Homeland Security; and
18  PAMELA BONDI, Attorney General of the
    United States,
19
20                        *Respondents*.

21

22

23

24

25

26

27

28

**INTRODUCTION**

1.     Petitioner ███████ ████████ ████ ████ ("Petitioner" or "Mr. ██████ brings this petition for writ of habeas corpus to remedy Respondents ("Respondents") arbitrary and unlawful re-detention of Mr. ██████ without any process in violation of the Immigration and Nationality Act ("INA") and the Fifth Amendment to the U.S. Constitution.

2.     Mr. ██████ is an asylum seeker from El Salvador who was released from ICE custody pursuant to a bail order from District Judge Vince Chhabria more than five years ago in May 2020. While at liberty for more than five years since then, he has complied with the bail order and ICE supervision conditions, including participation in ICE's Intensive Supervision Appearance Program ("ISAP"). Mr. ██████ has lived in the United States for more than 10 years, and has never been arrested or convicted of any crime in this country. His removal proceedings remain pending at the Board of Immigration Appeals ("BIA").

3.     Nevertheless, on October 14, 2025, ICE detained Mr. ██████ when he appeared as requested at a check-in at the ISAP office in San Jose, California.

4.     Mr. ██████ supports his wife and their two minor sons, ages 10 and 16. He works as a construction contractor and is the family's breadwinner. Mr. ██████ and his wife and children attend church in San Jose, CA.

5.     It is well-established that Mr. ██████ has a liberty interest in his years-long freedom, and the Fifth Amendment's Due Process Clause mandates that detention serve a legitimate purpose—to mitigate flight risk and/or prevent danger to the community—neither of which is served by Mr. ██████ detention. The fact that Mr. ██████ has been out of detention for more than *five years* without incident entitled him to procedural protections before he was redetained, which Respondents failed to provide.

6.     Mr. ██████ seeks immediate relief to remedy his unlawful detention.

**JURISDICTION**

7.     Mr. ██████ is currently detained in the custody of Respondents at 393 Blossom Hill Rd. Suite 260, San Jose, California.

8.     Jurisdiction is proper over a writ of habeas corpus pursuant to Art. 1 § 9, cl. 2 of

the United States Constitution (the Suspension Clause); 28 U.S.C. § 2241 (habeas corpus); and 28 U.S.C. § 1331 (federal question). This action arises under the Due Process Clause of the Fifth Amendment of the U.S. Constitution and the Immigration & Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*

9.    The Court may grant declaratory and injunctive relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et* seq., and the All Writs Act, 28 U.S.C. § 1651. This Court also has broad equitable powers to grant relief to remedy a constitutional violation. *See Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020).

10.    The federal habeas statute establishes the Court's power to decide the legality of Mr. ███ detention and directs courts to "hear and determine the facts" of a habeas petition and to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. Moreover, the Supreme Court has held that the federal habeas statute codifies the common law writ of habeas corpus as it existed in 1789. *INS v. St. Cyr*, 533 U.S. 289, 301 (2001) ("[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."). The common law gave courts power to release a petitioner to bail even absent a statute contemplating such release. *Wright v. Henkel*, 190 U.S. 40, 63 (1903) ("[T]he Queen's Bench had, 'independently of statute, by the common law, jurisdiction to admit to bail[.]'") (quoting *Queen v. Spilsbury*, 2 Q.B. 615 (1898)).

## **VENUE**

11.    Venue is proper in this District because it is the district in which Mr. ███ is confined at the time of this petition's filing. *See Doe v. Garland*, 109 F.4th 1188, 1197-98 (9th Cir. 2024); *see also Ozturk v. Hyde*, 136 F.4th 382, 390 (2d Cir. 2025); *Khalil v. Joyce*, No. 25-cv-01963 (MEF) (MAH), 2025 U.S. Dist. LEXIS 63573, at *31 (D.N.J. Apr. 1, 2025), *aff'd*, *Khalil v. President of the United States*, No. 25-08019 (3d Cir., May 6, 2025). This District also has territorial jurisdiction over Respondent Sergio Albarran, the ICE San Francisco Field Office Director who has taken Mr. ███ into custody in San Jose and is currently Mr. ███ custodian.

12. Additionally, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees or officers of the United States, acting in their official capacity; a substantial part of the events or omissions giving rise to the claim occurred or will occur in the Northern District of California; Petitioner resides in this District; and there is no real property involved in this action. *See* 28 U.S.C. § 1391(e)(1)(A).

## <u>INTRADISTRICT ASSIGNMENT</u>

13. Mr. ▮▮▮ was re-detained by the San Francisco Field Office of ICE in San Jose, California. Assignment to the San Jose or San Francisco Division of this Court is therefore proper under N.D. Local Rule 3-2(d).

## <u>PARTIES</u>

14. Petitioner ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ is a 42-year-old man from El Salvador who came to the United States fleeing persecution in 2015, and who has lived in the United States ever since. He resides with his wife and two sons in San Jose, California. Mr. ▮▮▮ was taken into custody by ICE on October 14, 2025 at approximately 11:25am at ICE's Intensive Supervision Appearance Program ("ISAP") Office at 393 PO Hill Rd. Suite 260, San Jose, California.

15. Respondent Sergio Albarran is the Field Office Director for the San Francisco Field Office of ICE Enforcement and Removal Operations ("ERO"). Respondent Albarran maintains an office in San Francisco, California, within this judicial district. The San Francisco Field Office oversees custody determinations of noncitizens at the ISAP Office in San Jose, California. Respondent Albarran is the federal official most directly responsible for Mr. ▮▮▮ custody and is his legal custodian. He is named in his official capacity.

16. Respondent Todd M. Lyons is the Acting Director of U.S. Immigration and Customs Enforcement. Respondent Lyons is responsible for ICE's policies, practices, and procedures, including those relating to the detention of noncitizens. Respondent Lyons is a legal custodian of Mr. ▮▮▮ He is named in his official capacity.

17. Respondent Kristi Noem is the Secretary of the U.S. Department of Homeland Security ("DHS"), an agency of the United States. She is responsible for overseeing DHS and its

sub-agencies, ICE and USCIS, and has ultimate responsibility over the detention of noncitizens

in civil immigration custody. *See* 8 U.S.C. § 1103(a). Respondent Noem is a legal custodian of

Mr. ██████ She is named in her official capacity.

18.    Respondent Pamela Bondi is the Attorney General of the United States and the

head of the Department of Justice ("DOJ"), which encompasses the Board of Immigration

Appeals ("BIA") and Immigration Judges ("IJs") as part of its sub-agency, the Executive Office

for Immigration Review ("EOIR"). As Attorney General, Respondent Bondi is responsible for

overseeing the implementation and enforcement of the federal immigration laws. *See* 8 U.S.C.

§ 1103(g). The Attorney General delegates this responsibility to the EOIR, which administers the

immigration courts and the BIA. Respondent Bondi is a legal custodian of Mr. ██████ She is

sued in her official capacity.

## STATEMENT OF FACTS

### A. Flight from Persecution and Initial Removal Proceedings

19.   Petitioner ████ ██████ ████ ████ is a 42-year-old man from El Salvador.

*See* Exh. A (Weiss Decl.) ¶ 3. In El Salvador, Mr. ██████ was repeatedly harassed, falsely

arrested, and tortured by Salvadoran officials because of his political activity on behalf of the

ARENA party. *Id.*, ¶ 8.

20.   After the opposing FMLN party won local elections, police officers engaged in

retribution against those who had supported ARENA, including Mr. ██████ *Id.* On one occasion,

police handcuffed Mr. ██████ to a tree, put a bag over his face, and beat him with a stick on his

stomach and legs to coerce a confession to a crime he did not commit. *Id.* On another occasion,

officers slammed his forehead into jail cell bars. *Id.* The repression escalated and on one occasion

officers even falsely charged Mr. ██████ with murder. *Id.* Mr. ██████ was released after a criminal

court judge found him innocent and dismissed the charges. *Id.* Police subsequently arrested Mr.

██████ at least four more times on trumped-up charges, but each time authorities failed to present

any evidence of his involvement in any crime, and charges were either never filed or dismissed.

*Id.*

21.  Around 2015, Mr. ████ fled El Salvador after gang members associated with the FMLN demanded that he spread propaganda on behalf of FMLN. *Id.*, ¶ 9. When Mr. ████ refused, the gang members viciously attacked him, sending him to the hospital with a broken collarbone. *Id.* After Mr. ████ wife reported the assault, gang members appeared outside Mr. ████ home and began shooting at the home, injuring Mr. ████ brother. *Id.*

22.  Mr. ████ fled to the United States, and was detained by the Department of Homeland Security ("DHS") near the border. *Id.*, ¶ 10-11. He was placed into removal proceedings and applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *Id.*

23.  DHS initially detained Mr. ████ under its authority in 8 U.S.C. § 1226. *Id.*, ¶ 12. However, an Immigration Judge ("IJ") determined Mr. ████ was not a flight risk or danger to the community and ordered him released on a $2500 bond. *Id.*, ¶ 13. Mr. ████ was released and moved to San Jose, California. *Id.* He complied with the bond conditions.

**B. Re-detention and Repeated Grants of Relief by the Immigration Judge**

24.  An immigration judge has granted Mr. ████ protection from removal *three times*, but each time the DHS has appealed, leading to further proceedings. *Id.*, ¶ 17-21. Mr. ████ removal proceedings currently remain pending at the Board of Immigration Appeals ("BIA").

25.  In early 2018, Mr. ████ received a notice to present himself at ICE offices in San Francisco, California. *Id.*, ¶ 15. On February 5, 2018, Mr. ████ appeared as requested, and was arrested by DHS at the appointment. *Id.* DHS alleged that Mr. ████ was subject to an outstanding warrant and Interpol Red Notice in El Salvador. *Id.* The warrant and Red Notice, issued more than two years after Mr. ████ left El Salvador, alleged that Mr. ████ had been involved in gang-related activities and "aggravated theft," without any specific date, location, or other details. *Id.* Mr. ████ denied ever having been involved in a theft or gang activity. *Id.* DHS determined that Mr. ████ was subject to detention under INA § 236. *Id.*

1       26.  On July 5, 2018, an immigration judge ("IJ") held a hearing on Mr. ███

2 applications for asylum, withholding of removal, and CAT protection at which Mr. ███

3 testified. *Id.*, ¶ 16.

4       27.  On August 16, 2018, the IJ issued a decision granting Mr. ███ asylum. *Id.*, ¶

5 17. The IJ found Mr. ███ credible, and found that there was insufficient evidence that Mr.

6 ███ had committed any crime in El Salvador that would make him ineligible for asylum. *See*

7 8 U.S.C. § 1158(b)(2)(iii) (making ineligible for asylum any person for whom there are "serious

8 reasons to believe" they have committed a "serious non-political crime").

9       28.  DHS appealed the IJ's decision granting asylum. *Id.*, ¶ 18. On February 7, 2019,

10 the Board of Immigration Appeals ("BIA") remanded the case to the IJ to further evaluate the

11 Red Notice. *Id.*

12       29.  On March 25, 2019, the IJ issued a decision again granting Mr. ███ asylum.

13 *Id.*, ¶ 19. The IJ found that there were significant deficiencies in the arrest warrant and Red

14 Notice. *Id.* Examining the evidence of corruption in El Salvador and Mr. ███ own

15 testimony, the IJ found that the allegations were likely politically motivated, and there was no

16 "fair probability" that Mr. ███ engaged in criminal activity in El Salvador. *Id.*

17       30.  DHS again appealed the IJ's decision granting asylum. *Id.*, ¶ 20. On August 22,

18 2019, the BIA issued a decision reversing the asylum grant. *Id.* The BIA stated that DHS need

19 only provide evidence that the serious non-political crime bar "*may* apply" and then the burden

20 shifts to Mr. ███ to prove conclusively that the bar does not apply. *Id.* Under that burden-

21 shifting, the BIA found that Mr. ███ had not met his burden. *Id.* The BIA remanded for the IJ

22 to consider Mr. ███ CAT claim. *Id.*

23       31.  On remand, on November 5, 2019, the IJ issued an order granting Mr. ███

24 CAT protection. *Id.*, ¶ 21. The IJ found that, given past torture and the government's continued

25 interest in him, Mr. ███ is likely to be tortured in El Salvador. *Id.*

26       32.  On November 15, 2019, DHS filed a third appeal to the BIA. Mr. ███ case

27 has been pending at the BIA since, with no decision. *Id.,* ¶ 22.

28

33.  In 2022, the BIA set a briefing schedule on the appeal. *Id.*, ¶ 23. On July 19,

2022, Mr. ███ timely submitted a brief opposing DHS's appeal and defending the IJ's CAT

grant. *Id.* He also submitted an alternative motion to remand based on new country conditions in

El Salvador, including the so-called "State of Emergency." *Id.*

34.  On August 31, 2022, the U.S. Court of Appeals for the Ninth Circuit issued

*Gonzalez-Castillo v. Garland*, 47 F.4th 971 (9th Cir. 2022). In *Gonzalez-Castillo*, the court

considered the case of a Red Notice from El Salvador, and rejected the BIA's holding that DHS

need only present "some evidence" that the serious nonpolitical crime bar to asylum "might

apply" in order to shift the burden to the asylum applicant to disprove it. 47 F.4th at 979. Instead,

the Ninth Circuit held that the statute requires a specific finding of probable cause that a crime

was committed in order to apply the bar. *Id.* The Ninth Circuit found the Red Notice in that case

did not meet the probable cause standard. *Id.* at 978-79. After the issuance of *Gonzalez-Castillo*,

Mr. ███ submitted a supplemental brief to the BIA asking the BIA to reinstate the IJ's asylum

grant or remand for the IJ to reconsider whether Mr. ███ was barred from asylum in light of

*Gonzalez-Castillo*. Exh. A (Weiss Decl.), ¶ 25.

35.  On April 3, 2023, the Commission for the Control of Interpol's Files ("CCF")

deleted the Red Notice related to Mr. ███ *Id.*, ¶ 26. The notice from Interpol indicated that

the Red Notice "raised questions as to the compliance with applicable rules" regarding the

reliability of Red Notices. *Id.* Mr. ███ subsequently submitted a supplement to the BIA

advising of the deletion of Mr. ███ Red Notice and arguing that this—independently and

additionally to *Gonzalez-Castillo*—required reassessment of the BIA's prior serious nonpolitical

crime determination. *Id.*, ¶ 27. DHS did not respond to this filing. *Id.*

36.  As of October 14, 2025, Mr. ███ case remains pending at the BIA with no

decision on DHS's appeal from the IJ's CAT order or Mr. ███ motions related to his asylum

claims. Mr. ███ has never been ordered removed by an immigration judge. His case remains

pending.

**C. Release and Participation in the Community Over the Past 5 Years**

37.   Meanwhile, on May 25, 2020, after Mr. ███ had been in custody for more than two years and the IJ had thrice granted him relief, U.S. District Judge Vince Chhabria granted his individualized bail application submitted as part of a class action challenging conditions of immigration detention during the COVID-19 pandemic. *See* Exh. B, Bail Application Approval Order; *see Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36 (N.D. Cal. 2020), *aff'd in part and ref'd to mediation,* 845 Fed. Appx. 530 (9th Cir. 2021) (granting TRO and providing district court bail application process for individuals detained in certain ICE facilities). Judge Chhabria ordered Mr. ███ released on bail. Exh. B; Exh. A (Weiss Decl.), ¶ 31.

38.   The next day, May 26, 2020, ICE released Mr. ███ on an order of supervision. *See* Exh. A (Weiss Decl.), ¶ 32. ICE placed Mr. ███ on a monitoring program through the Intensive Supervision Appearance Program ("ISAP"). *Id*. At first, Mr. ███ was outfitted with a mandatory ankle monitor with a GPS tracking device. *Id.*, ¶ 20. However, around 2022, in recognition of Mr. ███ compliance with his order of supervision, ISAP de-escalated Mr. ███ case and removed the GPS ankle monitor. *Id.* Mr. ███ continued to communicate with ISAP, appear at virtual check-ins, and comply with all required conditions through the BI SmartLINK application on his phone. *Id.*

39.   In the more than 5 years since his release from ICE detention, Mr. ███ has complied with the bail order and ICE's order of supervision. *See id.* He has repeatedly attended his virtual check-ins through the BI SmartLINK application. He has not been arrested for or convicted of any crime.

40.   Since his release, Mr. ███ has lived with his wife and children, ages 10 and 16, in San Jose, California. *Id.*, ¶ 6. Mr. ███ wife has disabilities limiting her ability to work and care for the children. *Id.* Mr. ███ spends time with his wife and children. *Id.* He attends church and cares for his children, including taking them to required doctor's appointments. *Id.*

41.   In 2021, after his release from custody, U.S. Citizenship and Immigration Services ("USCIS") issued Mr. ███ an employment authorization document, allowing him to work lawfully in the United States. *Id.*, ¶ 35. Mr. ███ works in construction and is the primary breadwinner and supporter of his wife and children. *Id.*

42. Mr. ███ has never been arrested for or convicted of any crime during his 10 years in the United States.

**D. Re-Detention Without Process or a Hearing**

43. On October 9, 2025, Mr. ███ unexpectedly received a call from a person who claimed to be his "new ISAP officer." *Id.*, ¶ 36. The officer told Mr. ███ that his previously-scheduled virtual ISAP check-in on October 16, 2025 was being converted to an in-person check-in at the ISAP office at 393 Blossom Hill Rd., Suite 260, in San Jose, California on October 14, 2025.

44. On October 14, 2025, Mr. ███ appeared as requested at the ISAP office in San Jose, California. *Id.*, ¶ 40. Despite prior assurances that he would not be detained, ICE officers met him at the office and took him into custody. *Id.*, ¶ 39. ICE did not provide Mr. ███ any notice, hearing, or process prior to his arrest.

45. After detaining Mr. ███ an ICE officer told Mr. ███ counsel that Mr. ███ had two recent ISAP violations where he failed to upload a photo of himself to the BI Application within the short 2-hour period permitted. *Id.*, ¶ 41. Although the ICE officer acknowledged that Mr. ███ did upload the photo on the same day, he said it was slightly after the 2-hour window. *Id.* Mr. ███ contested those assertions and believes he has complied with all ISAP requirements. *Id.*, ¶ 41-42. ICE did not provide Mr. ███ any evidence or noncompliance, nor give Mr. ███ an opportunity to provide contrary evidence of compliance before taking him into custody. *Id.*

46. Upon information and belief, at the time of filing Mr. ███ remains detained at the San Jose ISAP office at 393 Blossom Hill Rd. Suite 260, in San Jose, California. Exh. A (Weiss Decl.), ¶ 43.

## **LEGAL FRAMEWORK**

### **I.   RIGHT TO A HEARING PRIOR TO RE-INCARCERATION**

47. The Due Process Clause of the Fifth Amendment makes it unlawful for Respondents to re-detain Mr. ███ without first providing a pre-deprivation hearing before a

1  neutral decision maker to determine whether re-detention is justified by a risk of flight or danger

2  to the community.

3        48.   Civil immigration detention must be justified by a permissible purpose, and must

4  be reasonably related to that purpose. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The two

5  permissible regulatory goals are "ensuring the appearance of [noncitizens] at future immigration

6  proceedings" and "preventing danger to the community." *Id.*; *see also Matter of Patel*, 17 I&N

7  Dec. 597, 666 (BIA 1976) ("[A noncitizen] generally is not and should not be detained or

8  required to post bond except on a finding that he is a threat to the national security, or that he is a

9  poor bail risk.") (internal citations omitted).

10        49.   The statute and regulations grant ICE the ability to revoke a noncitizen's

11  immigration bond and re-arrest the noncitizen at any time. 8 U.S.C. § 1226(b); 8 C.F.R. §

12  236.1(c)(9). However, notwithstanding the breadth of the statutory language in § 1226(b), in

13  *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981), the BIA recognized an implicit limitation

14  on ICE's authority to re-arrest noncitizens. There, the BIA held that "where a previous bond

15  determination has been made by an immigration judge, no change should be made by [the DHS]

16  absent a change of circumstance." *Id.*

17        50.   In practice, DHS "requires a showing of changed circumstances both where the

18  prior bond determination was made by an immigration judge *and* where the previous release

19  decision was made by a DHS officer." *Saravia v. Barr*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal.

20  2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) (emphasis

21  added). The Ninth Circuit has assumed that, under *Matter of Sugay*, ICE has no authority to re-

22  detain an individual absent changed circumstances. *Panosyan v. Mayorkas*, 854 F. App'x 787,

23  788 (9th Cir. 2021) ("Thus, absent changed circumstances … ICE cannot redetain Panosyan.").

24        51.   ICE has further limited its authority as described in *Sugay*, and "generally only re-

25  arrests [noncitizens] pursuant to § 1226(b) after a *material* change in circumstances." *Saravia*,

26  280 F. Supp. 3d at 1197 (quoting Defs.' Second Supp. Br. at 1, Dkt. No. 90) (emphasis added).

27  Thus, under BIA case law and ICE practice, ICE may re-arrest a noncitizen who had been

28

1   previously released on bond only after a material change in circumstances. *See Saravia*, 280 F.

2   Supp. 3d at 1176; *Matter of Sugay*, 17 I&N Dec. at 640.

3        52.   ICE's power to re-arrest a noncitizen who is at liberty is also constrained by the

4   demands of due process. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("the

5   government's discretion to incarcerate non-citizens is always constrained by the requirements of

6   due process"). "'It is well established that the Fifth Amendment entitles [noncitizens] to due

7   process of law in deportation proceedings.'" *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting

8   *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government

9   custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the

10   Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also id.* at 718

11   (Kennedy, J., dissenting) ("Liberty under the Due Process Clause includes protection against

12   unlawful or arbitrary personal restraint or detention.").

13        53.   Courts in this district have repeatedly recognized that due process requires that a

14   noncitizen like Mr. ▮▮▮▮ who was previously found by an adjudicator to be appropriate for

15   release from immigration detention be given a pre-deprivation hearing *before* ICE re-detains

16   him. *See, e.g.*, *Serrano v. Albarran*, No. 25-cv-08408-EKL, 2025 U.S. Dist. LEXIS 195917, at

17   *5 (N.D. Cal. Oct. 2, 2025) (ordering release and a pre-deprivation hearing before re-detention);

18   *Pinchi v. Noem*, No. 25-cv-06632-PCP, 2025 U.S. Dist. LEXIS 142213, at *8 (N.D. Cal. July 24,

19   2025) (same); *Enamorado v. Kaiser*, No. 25-CV-04072-NW, 2025 WL 1382859, at *3 (N.D.

20   Cal. May 12, 2025) (temporary injunction warranted preventing re-arrest at plaintiff's ICE

21   interview when he had been on bond for more than five years); *Romero v. Kaiser*, No. 22-cv-

22   02508-TSH, 2022 WL 1443250, at *3-4 (N.D. Cal. May 6, 2022); *Jorge M. F. v. Wilkinson*, 534

23   F. Supp. 3d 1050 (N.D. Cal. 2021); *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL

24   5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963 (N.D. Cal.

25   2019); *Meza v. Bonnar*, 2018 WL 2554572 (N.D. Cal. June 4, 2018); *see also Doe v. Becerra*,

26   No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, *4 (E.D. Cal. Mar. 3, 2025) (holding the

27   Constitution requires a hearing before any re-arrest).

28

54.  Indeed, in similar circumstances to this case, where a noncitizen released on a *Zepeda-Rivas* bail order was re-arrested prior to being provided a pre-deprivation hearing, a judge in this District just weeks ago issued a TRO and preliminary injunction requiring ICE to immediately release the petitioner and enjoined the government "from arresting, detaining, or removing the petitioner without notice and a hearing to determine whether a material change of circumstances justifies his re-detention." *Duong v. Kaiser*, No. 25-cv-07598-JST, 2025 U.S. Dist. LEXIS 185024 (N.D. Cal., Sept. 19, 2025); *see also Doe*, 2025 WL 691664, at *4 (granting TRO as to an individual who had already been re-arrested).

**A. Mr. ███  Protected Liberty Interest in His Conditional Release**

55.  Mr. ███  liberty from immigration custody and his weighty interest in avoiding re-incarceration is protected by the Due Process Clause. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment…lies at the heart of the liberty" that the Due Process Clause protects); *Morrissey v. Brewer*, 408 U.S. 471, 482-483 (1972) (holding that a parolee has a protected liberty interest in his conditional release); *Young v. Harper*, 520 U.S. 143, 146-47 (1997); *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973).

56.  In *Morrissey*, the Supreme Court examined the "nature of the interest" that a parolee has in "his continued liberty." 408 U.S. at 481-82. The Court noted that, "subject to the conditions of his parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* at 482. "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others." *Id.* Therefore, "[b]y whatever name, the liberty is valuable and must be seen within the protection of the [Fifth] Amendment." *Id.*

57.  This basic principle—that individuals have a liberty interest in their conditional release—has been reinforced by both the Supreme Court and the circuit courts on numerous occasions since *Morrissey*. *See, e.g.*, *Young*, 520 U.S. at 152 (holding that individuals placed in a pre-parole program created to reduce prison overcrowding have a protected liberty interest requiring pre-deprivation process); *Gagnon*, 411 U.S. at 781-82 (holding that individuals

1    released on felony probation have a protected liberty interest requiring pre-deprivation process).

2    As the First Circuit has explained, when analyzing the issue of whether a specific conditional

3    release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by

4    comparing the specific conditional release in the case before them with the liberty interest in

5    parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir.

6    2010) (internal quotation marks and citation omitted); *see also, e.g.*, *Hurd v. District of*

7    *Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017) ("a person who is in fact free of physical

8    confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him

9    to constitutional due process before he is re-incarcerated") (citing *Young*, 520 U.S. at 152,

10    *Gagnon*, 411 U.S. at 782, and *Morrissey*, 408 U.S. at 482)

11    58.    In fact, an individual maintains a protected liberty interest in his freedom even

12    where he obtained liberty through a mistake of law or fact. *See Hurd*, 864 F.3d at 683; *Gonzalez-*

13    *Fuentes*, 607 F.3d at 887; *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (noting that

14    due process considerations support the notion that an inmate released on parole by mistake,

15    because he was serving a sentence that did not carry a possibility of parole, could not be re-

16    incarcerated because the mistaken release was not his fault, and he had appropriately adjusted to

17    society, so it "would be inconsistent with fundamental principles of liberty and justice" to return

18    him to prison) (internal quotation marks and citation omitted).

19    59.    Here, Mr. ████ conditional release is in relevant ways similar to the liberty

20    interest in parole protected in *Morrissey*. Just as in *Morrissey*, Mr. ████ release "enables him

21    to do a wide range of things open to persons'" who have never been in custody or convicted of

22    any crime, including to live at home, work, care for his children, and "be with family and friends

23    and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Indeed,

24    Mr. ████ is a primary breadwinner and support for his wife and two minor children. Exh. A

25    (Weiss Decl), ¶ 5-6. He works, participates in church, spends time with family and friends, and

26    contributes to the community. *See id.* He has complied with all conditions of release for over five

27    years as he continues to pursue relief from removal. *Id.*, ¶ 34.

28

60.  Even if "lawfully revocable," Mr. ▮▮▮▮ 5 years at liberty provides him a "a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd*, 864 F.3d at 683; *see also Gonzalez-Fuentes*, 607 F.3d at 887 (holding that inmates released to electronic monitoring program had liberty interest protected by the Due Process Clause because the program "allowed the appellees to live with their loved ones, form relationships with neighbors, lay down roots in their community, and reside in a dwelling of their own choosing (albeit subject to certain limitations) rather than in a cell designated by the government."); *see also Jorge M.F.*, 534 F. Supp. 3d at 1054 (holding that released noncitizen made a substantial showing that he had liberty interest requiring pre-deprivation hearing before re-arrest, even after original bond order was reversed on appeal); *Duong*, 2025 U.S. Dist. LEXIS 185024, at *13-14 (noncitizen released on *Zepeda-Rivas* bail order had strong liberty interest even after expiration of settlement agreement); *Carballo v. Andrews*, No. 1:25-cv-00978-KES-EPG (HC), 2025 U.S. Dist. LEXIS 158839, at *4 (E.D. Cal., Aug. 15, 2025) (same).

**B. Mr. ▮▮▮▮ Strong Interest in His Liberty Required a Hearing *Before* He Was Re-Incarcerated By ICE**

61.  If a petitioner identifies a protected liberty interest, the Court must then determine what process is due. "Adequate, or due, process depends upon the nature of the interest affected. The more important the interest and the greater the effect of its impairment, the greater the procedural safeguards the [government] must provide to satisfy due process." *Haygood v. Younger*, 769 F.2d 1350, 1355-56 (9th Cir. 1985) (en banc) (citing *Morrissey*, 408 U.S. at 481-82). To determine the process due in this context, courts use the flexible balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See, e.g.*, *Ortega*, 415 F. Supp. 3d at 970; *Jorge M. F.*, 534 F. Supp. 3d at 1055.

62.  Under the *Mathews* test, the Court balances three factors: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

1    requirements would entail." *Haygood*, 769 F.2d at 1357 (*citing Mathews v. Eldridge*, 424 U.S.

2    319, 335 (1976)).

3         63.   Importantly, the Supreme Court "usually has held that the Constitution requires

4    some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v.*

5    *Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Post-deprivation process only comports

6    with due process in a "special case" where post-deprivation remedies are "the only remedies the

7    State could be expected to provide". *Zinermon*, 494 U.S. at 128. Further, only where "one of the

8    variables in the *Mathews* equation—the value of predeprivation safeguards—is negligible in

9    preventing the kind of deprivation at issue" can the government avoid providing pre-deprivation

10   process. *Id.*; *see also Lynch v. Baxley*, 744 F.2d 1452 (11th Cir. 1984) (holding that individuals

11   awaiting involuntary civil commitment proceedings may not constitutionally be held in jail

12   pending the determination as to whether they can ultimately be recommitted).

13         64.   Here, the *Mathews* factors all favor Mr. ███ and establish that the government

14   was required to provide Mr. ███ notice and a hearing *prior* to any re-incarceration and

15   revocation of his bond. *See, e.g.*, *Ortega*, 415 F. Supp. 3d at 970; *Jorge M. F.*, 534 F. Supp. 3d at

16   1055; *Duong*, 2025 U.S. Dist. LEXIS 185024, at *16.

17         65.   First, Mr. ███ private interest in his liberty is substantial. *See Foucha v.*

18   *Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core

19   of the liberty protected by the Due Process Clause."). The Supreme Court has recognized that

20   individuals released from serving a *criminal* sentence have a "valuable" liberty interest—even if

21   that freedom is lawfully revocable. *Morrissey*, 408 U.S. at 482; *Young*, 520 U.S. at 152. Thus,

22   released individuals who have not violated the conditions of their release must be provided

23   notice and a hearing *before* they are reincarcerated. *See Johnson*, 682 F.2d at 873; *Gonzalez-*

24   *Fuentes,* 607 F.3d at 891-92; *Hurd*, 864 F.3d at 683. If that is true for parolees or probationers—

25   who have a diminished liberty interest given their convictions, *see, e.g, U.S. v. Knights*, 534 U.S.

26   112, 119 (2001)—the interest for an individual awaiting civil immigration proceedings is even

27   weightier. *See, e.g.*, *Ortega*, 415 F. Supp. 3d at 969 ("[G]iven the civil context" of immigration

28   detention, a noncitizen's interest in release on bond is "arguably greater than the interest of

1  parolees in *Morrissey*."). Here, Mr. ███ interest is even more pronounced than the average

2  noncitizen previously released from custody, given that the government has provided him

3  employment authorization, allowing him to work lawfully. *See* Exh. A (Weiss Decl.), ¶ 35.

4         66.   Second, the risk of erroneous deprivation of liberty is high if ICE can unilaterally

5  re-detain Mr. ███ without a hearing before a neutral adjudicator that would determine whether

6  detention serves a permissible purpose, ie. preventing danger or flight risk. *See Zadvydas*, 533

7  U.S. at 690. A federal judge in this district has already reviewed Mr. ███ case and found

8  that he should be admitted to bail. Exh. B (Bail Order). In the five years since, Judge Chhabria's

9  judgment was proven correct: Mr. ███ complied with the bail conditions, reported as required

10  to ICE, and remained law-abiding. Moreover, ICE itself de-escalated Mr. ███ case, taking

11  him off an ankle monitor. Exh. A (Weiss Decl.), ¶ 33. And an immigration judge has repeatedly

12  found that Mr. ███ is entitled to relief and protection from removal. *Id.*, ¶ 17, 19, 21. These

13  developments show that detention is likely *not* warranted.

14         67.   To the extent ICE is alleging that Mr. ███ violated the terms of his release by

15  uploading photos of himself to the BI Application on the same date he was supposed to but

16  slightly after the brief 2-hour window required, that would not show he is a flight risk. On the

17  contrary, even if true it shows he is endeavoring to comply with the ISAP requirements. Further,

18  Mr. ███ contests that he has missed any reporting window, and has certainly not done so

19  intentionally or knowingly. To the extent there is a dispute regarding Mr. ███ compliance

20  with ISAP, a hearing is particularly important in ensuring Mr. ███ is not unnecessarily

21  detained. Yet DHS's choice to re-detain Mr. ███ without a hearing has deprived him of his

22  liberty and separated him from his family and community without any opportunity for Mr.

23  ███ to contest this unilateral action. *See, e.g., Alvarenga Matute v. Wofford*, No. 1:25-cv-

24  01206-KES-SKO, 2025 WL 2817795 (E.D. Cal. Oct. 3, 2025) (granting TRO for petitioner

25  detained at his scheduled check-in without notice or hearing, and where compliance with release

26  terms is in dispute, and ordering immediate release and enjoining Respondents from re-detention

27  without a pre-deprivation hearing before a neutral adjudicator where Respondents bear the

28  burden to show by clear and convincing evidence that petitioner is a flight risk or danger to the

community); *J.O.L.R. v. Wofford*, No. 1:25-cv-01241-KES-SKO, 2025 WL 2718631 (E.D. Cal. Sept. 23, 2025) (same).

68. By contrast, the value of a pre-deprivation hearing before a neutral decision-maker is high. "A neutral judge is one of the most basic due process protections." *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Indeed, the Ninth Circuit has noted that the risk of an erroneous deprivation of liberty under *Mathews* can be decreased where a neutral decisionmaker, rather than ICE alone, makes custody determinations. *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1091-92 (9th Cir. 2011). A hearing before a neutral decisionmaker is much more likely than ICE's unilateral decision to produce accurate determinations regarding factual disputes, and to determine whether Mr. ██████ actually currently poses a flight risk or danger such that detention is justified. *See, e.g, Doe*, 2025 U.S. Dist. LEXIS 37929, at *15 ("At a hearing, a neutral decisionmaker can consider all of the facts and evidence before him to determine whether Petitioner in fact presents a risk of flight or dangerousness."). Requiring such a hearing be held *before* Mr. ██████ is re-detained serves to protect his liberty interest, facilitate his right to counsel and to gather evidence, and ensure that ICE's decision to revoke Mr. ██████ release does not evade review. *See Zinermon*, 494 U.S. at 127; *Hurd*, 864 F.3d at 683.

69. Third, the government's interest in detaining Mr. ██████ *without* a hearing is low. The government cannot plausibly assert it has any basis for detaining Mr. ██████ now, when he has lived in the community caring for his family without incident for more than five years. In any event, providing Mr. ██████ with a hearing before this Court (or another neutral decisionmaker) to determine whether there is evidence that Mr. ██████ *currently* poses any risk of flight or danger to the community imposes a *de minimis*, if any, burden on the government. Such a hearing is far *less* costly and burdensome for the government than keeping Mr. ██████ detained at what the Ninth Circuit described as a "staggering" cost to the public of $158 each day per detainee in 2017, "amounting to a total daily cost of $6.5 million" (the current cost now is likely significantly higher). *Hernandez*, 872 F.3d at 996.

70. Because the government failed to give Mr. ███ the notice and hearing he was due under the *Mathews* factors prior to re-incarcerating him, the Court should order him released until the government provides him with a constitutionally-compliant hearing.

71. At a pre-deprivation hearing, due process requires that the government justify re-detention of Mr. ███ by clear and convincing evidence that he poses a flight risk or danger. *See Singh*, 638 F.3d at 1204 ("[D]ue process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake . . . are both particularly important and more substantial than mere loss of money.") (internal quotation marks omitted); *Ixchop Perez v. McAleenan*, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020) (noting the "consensus view" among District Courts concluding that, "where . . . the government seeks to detain [a noncitizen] pending removal proceedings, it bears the burden of proving that such detention is justified); *Jorge M.F.*, 534 F. Supp. 3d at 1057 (where noncitizen was due a pre-deprivation hearing before being returned to custody, ordering that the government bear the burden at the hearing by clear and convincing evidence); *Doe*, 2025 U.S. Dist. LEXIS 37929, at *21 (same).

72. The hearing must also consider whether alternatives to detention—such as the ISAP program that has successfully managed Mr. ███ release for more than five years—would adequately ensure Mr. ███ appearance. Detention is not reasonably related to this purpose if there are alternatives to detention that could mitigate risk of flight. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979). Accordingly, alternatives to detention must be considered in determining whether Mr. ███ re-incarceration is warranted. *Cf. G.C. v. Wofford*, No. 1:24-cv-01032-EPG-HC, 2025 U.S. Dist. LEXIS 39773, at *26 (E.D. Cal. Mar. 4, 2025) (ordering bond hearing at which IJ considers alternative conditions of release); *M.R. v. Warden, Mesa Verde Det. Ctr.*, No. 1:24-cv-00988-EPG-HC, 2025 U.S. Dist. LEXIS 75622, at *34 (E.D. Cal. Apr. 21, 2025) (same).

### CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution**
**Procedural Due Process**
**Re-Arrest Without Pre-Deprivation Hearing**

73.  Mr. ███ re-alleges and incorporates by reference the paragraphs above.

74.  The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. amend. V.

75.  Mr. ███ has a vested liberty interest in his release from immigration custody. Due Process does not permit the government to strip him of that liberty without a hearing before a neutral adjudicator. *See Morrissey*, 408 U.S. at 487-488.

76.  The government's rearrest of Mr. ███ five years after he was released without any hearing violated his right to procedural due process. At the very least, he must be released until he has a constitutionally-compliant pre-deprivation hearing before a neutral adjudicator.

### SECOND CLAIM FOR RELIEF
### Violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution
### Substantive Due Process

77. Mr. ███ re-alleges and incorporates by reference the paragraphs above.

78.  The Due Process Clause of the Fifth Amendment forbids the government from depriving any individuals of their right to be free from unjustified deprivations of liberty. U.S. Const. amend. V.

79.  Due Process does not permit the government to strip Mr. ███ of liberty without it being tethered to one of the two constitutional bases for civil immigration detention: to mitigate against the risk of flight or to protect the community from danger.

80.  Civil detention that is unrelated to a valid regulatory purpose or excessive in relation to that purpose is punitive, in violation of substantive due process. *See Jones*, 393 F.3d at 934.

81.  Since Mr. ███ was released in May 2020, he has complied with the bail order and the additional conditions of release imposed on him by ICE, has appeared for ICE appointments, and poses no risk of flight. Additionally, during those five years at liberty, Mr. ███ has not been arrested or convicted of any crime. Instead, he has been working and taking care of his wife and minor U.S. citizen children. He poses no danger.

82.  The government's re-arrest of Mr. ███ is untethered from any valid basis for civil immigration detention, is excessive in relation to any risk that does exist, and is therefore

punitive in violation of substantive due process. Mr. ███ continued detention is unlawful

and violates due process.

### THIRD CLAIM FOR RELIEF
#### Violation of the Immigration and Nationality Act, 8 U.S.C. § 1226(b) and Implementing Regulations

83. Mr. ███ re-alleges and incorporates by reference the paragraphs above.

84. Pursuant to 8 U.S.C. § 1226(b); 8 C.F.R. § 236.1(c)(9), BIA case law, and ICE

   practice, ICE may re-arrest a noncitizen who has been released on bond only after

   a material change in circumstances. *See Saravia*, 280 F. Supp. 3d at 1176; *Matter*

   *of Sugay*, 17 I&N Dec. at 640. Here, no such material change in circumstances

   exists. Mr. ███ was released on bond by an Immigration Judge in May 2015,

   and later granted bail by a U.S. Federal District Judge in May 2020. Mr. ███

   has no criminal arrests in the United States, and no other circumstances exist to

   warrant his re-detention by Respondents.

### PRAYER FOR RELIEF

WHEREFORE, Mr. ███ requests that the Court:

1) Assume jurisdiction over this matter;

2) Declare Respondents' actions in re-arresting Mr. ███ on October 14, 2025 and

   continuing to detain him contrary to law;

3) Issue a Writ of Habeas Corpus and order Respondents to immediately release Mr. ███

   from their custody;

4) Enjoin Respondents, and anyone acting in concert with them, from re-detaining Mr.

   ███ until a hearing is held before a neutral adjudicator, at which the government must

   establish by clear and convincing evidence that Petitioner presents a risk of flight or

   danger, and that no alternatives to detention can sufficiently protect its interests, before

   the Respondents can re-detain Mr. ███

5) Enjoin Respondents from causing Mr. ███ any additional harm during the pendency of

   this litigation, such as by transferring him farther away from his legal Counsel or placing

   him into solitary confinement;

6) Award reasonable costs and attorneys' fees under the Equal Access to Justice Act, as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and on any other basis justified under law; and

7) Grant such further relief as the Court deems just and proper.


                                             Respectfully submitted,

Date:    October 14, 2025              /s/ Etan Newman
                                        Etan Newman
                                        PANGEA LEGAL SERVICES

                                        *Pro Bono Attorney for Petitioner*




**VERIFICATION BY SOMEONE ACTING ON PETITIONER'S BEHALF PURSUANT TO 28 U.S.C. § 2242**


    I am submitting this verification on behalf of Mr. ▮ because I am his attorney. As Mr. ▮ attorney, I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.


Date:    October 14, 2025              /s/ Etan Newman
                                        Etan Newman

                                        *Pro Bono Attorney for Petitioner*