CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7224
    Facsimile: (415) 436-6748
    jevechius.bernardoni@usdoj.gov

Attorneys for Respondents

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| ███████████████, | Civil No. 3:25-cv-08774-VC |
|---|---|
| Petitioner, | |
| vs. | **RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER** |
| SERGIO ALBARRAN, *et al.*, | |
| Respondents. | |

## I. Introduction

Petitioner Nelon ███████████ ("Petitioner") is a former class member of *Zepeda Rivas v. Jennings*, No. 20-cv-02731-VC, who was *temporarily* released by this Court as a result of the Covid-19 pandemic and resulting conditions of confinement. *See Zepeda Rivas*, ECF No. 250. The protections from re-detention established for class members in *Zepeda Rivas*, which were always temporary, have now expired. Nothing in the *Zepeda Rivas* settlement contemplates or requires a pre-deprivation bond hearing before the government can re-detain Petitioner under the facts of this case. As such, Petitioner's temporary release did not create a protected liberty interest under the due process clause, and ICE should not be constrained from detaining him without any additional process. *See Giorges v. Kaiser*, No. 5:25-cv-07683-NW (N.D. Cal. Oct. 10, 2025) at ECF No. 17 p.13 (denying motion for preliminary injunction filed by former *Zepeda Rivas* class members and holding to "the

extent Petitioners argue that their release from detention under *Zepeda Rivas* entitles them to a liberty interest that they otherwise would not have had, that argument is unavailing"). Petitioner thus cannot demonstrate that he is likely to succeed on his habeas claims.

## II. Background

### A. Petitioner's Immigration History pre-*Zepeda Rivas*

Petitioner is a native and citizen of El Salvador. Petition ¶ 19. In or around 2015, Petitioner fled to the United States, where he was detained near the border by the Department of Homeland Security ("DHS"). *Id.* ¶ 22. He was then placed in removal proceedings. *Id.* ¶¶ 22-36. At the time of *Zepeda Rivas*, he was detained pursuant to Section 1226(a), and he was denied bond by an immigration judge. *Zepeda Rivas*, ECF No. 232-3 at 1.

### B. *Zepeda Rivas* COVID Class Action

As a result of his detention, Petitioner became a class member in *Zepeda Rivas v. Jennings*, No. 20-cv-02731-VC. *Zepeda Rivas* was filed in response to the COVID pandemic. It challenged the conditions of confinement at Mesa Verde and Yuba County jail resulting from the challenges of the pandemic, including the inability of detainees to socially distance and the lack of COVID testing. On April 29, 2020, this Court provisionally certified a *Zepeda Rivas* class and instituted a process for considering release requests from detainees. Under the standard conditions of release, which were incorporated into ever order granting release, the Court specifically ordered that: "[t]he Class Member's temporary release will expire upon the final adjudication of the habeas petition in this case[.]" *See Zepeda Rivas*, ECF Nos. 108 (Standard Conditions of Release), 369 (Revised Standard Conditions of Release). Petitioner was temporarily released pursuant to the *Zepeda Rivas* process on May 25, 2020. *See Zepeda Rivas*, ECF No. 250.

The parties in *Zepeda Rivas* subsequently entered into a settlement. *See Zepeda Rivas*, ECF Nos. 1205-1, 1229. The settlement agreement was heavily negotiated and extremely detailed. Under the terms of the settlement agreement, ICE generally agreed to forgo re-detaining released class members for three years following approval of the settlement "unless they pose[d] a threat to public safety or national security, and/or risk of flight." *See Zepeda* Rivas, ECF No. 1205-1, at 13 (Subsection III.A). But these protections ended after three years, and the agreement specifically authorizes ICE to re-detain

class members as before following the expiration of its three-year term:

> At the conclusion of the three-year period set forth in Subsection III.A, ICE's rearrest and re-detention practices for Class Members will occur pursuant to generally applicable law and policy.

*Id.* at 16 (Subsection III.G). While the agreement specified certain conditions for re-detention *during* the three-year period, *see id.* at 13–16, 18–19, it did not provide for any conditions, much less a pre-detention hearing requirement, for re-detention following the expiration of that term.

This Court approved the settlement on June 9, 2022. *See Zepeda Rivas*, ECF No. 1258. As such, class members, such as Petitioner, lost protection from re-detention on June 9, 2025, when the *Zepeda Rivas* settlement expired. *See* https://www.aclunc.org/our-work/legal-docket/zepeda-rivas-v-jennings-immigration-detention (notice that the *Zepeda Rivas* settlement expired on June 9, 2025).

### C. Post-*Zepeda Rivas* Proceedings

ICE officers detained Petitioner on October 14, 2025 at the ISAP office in San Jose, California. Petition ¶¶ 43-44. An ICE officer told Petitioner's counsel that Petitioner had two recent ISAP violations where he failed to upload a photo of himself to the BI Application within the short 2-hour period permitted. *Id.* ¶ 45.

## III. Legal Standard For Temporary Restraining Order

A temporary restraining order is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). To obtain relief, the moving party must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

## IV. Argument

### A. Petitioner Cannot Show A Likelihood Of Success On The Merits

#### 1. Because Petitioner's Release Under *Zepeda Rivas* Was Always Temporary, Petitioner's Due Process Claims Fail

Petitioner was temporarily released from custody during COVID as a result of the *Zepeda Rivas* litigation. By its terms, this release was always temporary and of a finite duration. His initial release

was subject to the mandatory, court-ordered condition that it would "expire upon the final adjudication of the habeas petition in this case[.]" *See Zepeda Rivas*, ECF No. 369. Under the settlement agreement negotiated between the parties and applicable to all class members, including Petitioner, ICE was specifically authorized to re-detain class members as usual after beginning three years following approval of the settlement. *See Zepeda Rivas* ECF No. 1205-1 at 16 (Subsection III(G)). The settlement was approved by the court on June 9, 2022. *See Zepeda Rivas* Dkt. No. 1258. As such, ICE was specifically authorized to re-detain temporarily released class members beginning June 9, 2025. Petitioner never had any reasonable expectation that his release would continue indefinitely, or that ICE would be constrained from re-detaining him after the three-year term ended.

The *Zepeda Rivas* class, which included Petitioner, was represented by a team of lawyers, and the terms of the settlement agreement were rigorously negotiated. That agreement could have specified that detention following the three-year period would require a pre-detention hearing. But it did not. No conditions whatsoever were imposed on DHS's ability to re-detain class members following the termination of the three-year term. The only conditions on re-detention were imposed *during* the three-year term—and even those conditions did not include any *pre-detention* process. *See Zepeda Rivas*, ECF No. 1205-1, at 13–14, 18–19.

Petitioner always knew that this release would not be permanent and that DHS would not be constrained from re-detaining him after the end of the three-year settlement term. Accordingly, Petitioner could have had no reasonable expectation of continued release after the termination of the three-year period. The government recognizes that any form of detention could be said to implicate an individual's liberty interests, and that Petitioner, like virtually everyone subject to detention, has reasons for wanting to remain out of custody. But those reasons do not create a protectible liberty interest in Petitioner's continued release here, in light of the specific circumstances and terms of his temporary release. *See Giorges*, No. 5:25-cv-07683-NW at ECF No. 17.

The recent case of *Uc Encarnacion v. Kaiser*, No. 22-cv-04369-CRB, 2022 WL 9496434, at *3 (N.D. Cal. Oct. 14, 2022), is more instructive. The petitioner in that case was released from detention by an IJ after a bond hearing, where the IJ found that ICE had not met its burden. ICE appealed to the BIA, which reversed. Uc then sought a TRO to enjoin his re-detention without further process before an

IJ. Judge Breyer denied this request. Although the court noted that "Uc's conduct while on bond was beyond reproach," it also observed that "Uc's release on bond "was always subject to direct review and, therefore, the possibility of reversal." 2022 WL 9496434, at *2. Accordingly, the court found that the petitioner's liberty interest was less weighty and "did not entitle him to an additional bond hearing with an IJ before he [could] be redetained following the BIA's order reversing his release on bond." *Id.* at *5.

Here, Petitioner received a full bond hearing before an immigration judge, and he was ordered detained without bond. The bail review process that this Court undertook during *Zepeda Rivas* was subject to unique circumstances dictated by the pandemic and the litigation, and did not supersede this finding. Now that the settlement agreement has expired, ICE should be entitled to return him to his pre-*Zepeda Rivas* custody, without any additional process. *See Giorges*, No. 5:25-cv-07683-NW at ECF No. 17.

        **2.**        **Under the Plain Text of 8 U.S.C. § 1225, Petitioner Must Be Detained Pending the Outcome of His Removal Proceedings**

In addition to the government's ability to re-detain Petitioner without a pre-deprivation bond hearing under the *Zepeda Rivas* settlement, Petitioner is an "applicant for admission" due to his presence in the U.S. without having been either "admitted or paroled." Such aliens are subject to the mandatory detention framework of 8 U.S.C. § 1225(b) that specifically applies to them.

Recent BIA authority confirms that Petitioner is subject to mandatory detention under § 1225(b). In *Matter of Yajure Hurtado*, 29 I.&N. Dec. 216 (BIA 2025), the BIA held that, based on the plain text of the statute, an alien who entered without inspection remains an "applicant for admission" who is "seeking admission," and is therefore subject to mandatory detention without a bond hearing, even if that alien has been present in the U.S. for years. *Id.*, slip op. at 220. Thus, the BIA also held that IJs lack authority to hold bond hearings for aliens in such circumstances. *Id.* The BIA considered, and rejected, the individual's argument that the government's "'longstanding practice' of treating aliens who are present in the United States without inspection as detained under [] 8 U.S.C.A. § 1226(a), and therefore eligible for a bond." *Id.* at 225. Citing the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the BIA explained that such a practice could be relevant where the statute is "doubtful and ambiguous," but here, "the statutory text of the INA . . . is instead clear and explicit in requiring mandatory detention of all

aliens who are applicants for admission, without regard to how many years the alien has been residing in the United States without lawful status." *Hurtado*, slip op. at 226. The BIA has therefore now confirmed, in a decision binding on IJs nationwide, what the government is arguing here: individuals such as Petitioner are "applicants for admission" subject to mandatory detention under § 1225(b), and have no right to a bond hearing.

Respondents recognize that recent district court preliminary injunction decisions have concluded that § 1225(b) is not applicable to aliens who were conditionally released in the past under § 1226(a).[1] But Petitioner here was not conditionally released DHS—he was subject to the unique, pandemic-specific process created by *Zepeda Rivas* and terminated upon the expiration of the settlement agreement term. Moreover, these non-binding decisions do not grapple with the textual argument that the BIA just held was "clear and explicit." *Hurtado*, slip op. at 226. Taken together, the plain language of §§ 1225(a) and 1225(b) indicate that applicants for admission, including those "present" in the U.S.—like Petitioner—are subject to mandatory detention under Section 1225(b). When there is "an irreconcilable conflict in two legal provisions," then "the specific governs over the general." *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1015 (9th Cir. 2017). While § 1226(a) applies generally to aliens who are "arrested and detained pending a decision on" removal, § 1225 applies more narrowly to "applicants for admission"—*i.e.*, aliens present in the U.S. who have not been admitted. Because Petitioner falls within this latter category, the specific detention authority under § 1225 controls over the general authority found at § 1226(a).

As an alien subject to mandatory detention under § 1225(b), Petitioner is not entitled to custody redetermination hearings at any time, whether pre- or post-detention. *Jennings*, 583 U.S. at 297 ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."); *Matter of Yajure Hurtado*, I&N Dec. at 229 (holding that immigration judge "lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A)"). Petitioner remain aliens who are amenable to expedited removal and subject to mandatory detention due to his presence in the U.S. without having been

---

[1] *See, e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Jimenez Garcia v. Kaiser*, No. 4:25-cv-06916-YGR (N.D. Cal. Aug. 29, 2025); *Hernandez Nieves v. Kaiser*, No. 25-CV-06921-LB, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025).

RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER
No. 3:25-cv-08774-VC                                    6

either "admitted or paroled" or physically present in the U.S. continuously for the two-year period immediately preceding the date of the determination of inadmissibility.

### 3. The *Mathews* Factors Do Not Apply, But Even If They Did, They Make Clear That No Additional Process Is Necessary

Although Petitioner urges this Court to evaluate this case under the traditional *Mathews* factors, a *Mathews* analysis is not appropriate here, where the terms of Petitioner's release make clear that no additional process is necessary. In the event that the Court elects to analyze Petitioner's claim under *Mathews*, the Court should find that Petitioner is not entitled to relief. Under *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), courts consider three factors in evaluating a procedural due process claim: the plaintiff's private interest, the risk of erroneous deprivation without additional procedures, and the government's interest. While leaving open the question of whether the *Mathews* test applies to a constitutional challenge to discretionary immigration detention, *see Rodriguez Diaz*, 53 F.4th at 1207, the Ninth Circuit has emphasized that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Id.* at 1206.[2] Against this backdrop, the three factors weigh against the additional process Petitioners requests here.

#### (i) Petitioner's History And Status Reduce His Liberty Interest

As discussed above, while Petitioner, like any individual facing detention, has an interest in remaining released, the circumstances of his release do not give rise to a protectible liberty interest warranting additional process. To the extent he has a liberty interest here, that interest is reduced by the fact that he is an alien in removal proceedings. *See Rodriguez Diaz*, 53 F.4th at 1206 ("The recognized liberty interests of U.S. citizens and aliens are not coextensive: the Supreme Court has 'firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens.'") (quoting *Demore v. Kim*, 538 U.S. 510, 522 (2003)). As the Supreme Court has explained, "[i]n the exercise of its broad power over naturalization and immigration,

---

[2] As the Ninth Circuit recognized in *Rodriguez Diaz*, "the Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1206 (9th Cir. 2022) (citations omitted). Whether the *Mathews* test applies in this context is an open question in the Ninth Circuit. *See Rodriguez Diaz*, 53 F.4th at 1207 (applying *Mathews* factors to uphold constitutionality of Section 1226(a) procedures in a prolonged detention context; "we assume without deciding that *Mathews* applies here").

RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER
No. 3:25-cv-08774-VC                                7

Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976). Indeed, the Supreme Court has repeatedly "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. That is especially true in light of Petitioner's particular circumstances, as an alien subject to mandatory detention who knew that his temporary release due to extraordinary circumstances would not be permanent. These aspects of Petitioner's situation greatly reduce his liberty interest here. *See Rodriguez Diaz*, 53 F.4th at 1206–08; *cf. Uc Encarnacion*, 2022 WL 9496434, at *4 (finding the petitioner's liberty interest less weighty than that of a Section 1226(a) detainee) (citing *Diouf v. Napolitano*, 634 F.3d 1081, 1086–87 (9th Cir. 2011)).

### (ii) The Risk Of Erroneous Deprivation Is Minimal

Second, there is no risk of erroneous deprivation of Petitioner's liberty here because Petitioner is subject to mandatory detention under Section 1225(b). Any deprivation of liberty, therefore, would not be *erroneous*: Congress has mandated that individuals such as Petitioner be subject to mandatory detention, without a pre-deprivation detention hearing, and without regarding to evidence of their risk of flight or danger to the community. 8 U.S.C. § 1225(b)(2).

In any event, applicants for admission like Petitioner, who was not admitted or paroled into the country, lack a liberty interest in *additional* procedures including a custody redetermination or pre-detention bond hearing. His status does not provide him with additional rights above and beyond the specific process already provided by Congress in § 1225. *See Thuraissigiam*, 591 U.S. at 139 ("aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border'"); *Ma v. Barber*, 357 U.S. 185, 190 (1958) (concluding that the parole of an alien released into the country while admissibility decision was pending did not alter her legal status); *Pena*, 2025 WL 2108913 at *2 (finding that mandatory detention under § 1225(b)(2)(A) of an alien arrested at a traffic stop in the interior of the United States "comports with due process"). Indeed, for "applicants for admission" who are amenable to § 1225(b)(1)—*i.e.*, because they were not physically present for at least two years on the date of inspection, 8 U.S.C. § 1225(b)(1)(A)(iii)(II)—"[w]hatever the procedure authorized by Congress . . . is due process," whether or not they are apprehended at the border or after entering the country. *Thuraissigiam*, 591 U.S. at 138–139 ("This rule would be meaningless if it became inoperative as soon as an

RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER
No. 3:25-cv-08774-VC                              8

arriving alien set foot on U.S. soil."). These aliens have "only those rights regarding admission that Congress has provided by statute." *Id.* at 140; *see Dave v. Ashcroft*, 363 F.3d 649, 653 (7th Cir. 2004). Petitioners are entitled only to the protections set forth by statute, and "the Due Process Clause provides nothing more." *Thuraissigiam*, 591 U.S. at 140.[3]

### (iii) The Government Has A Strong Interest In Detention Pending Removal

Turning to the third *Mathews* factor, the Ninth Circuit has held that "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore*, 538 U.S. at 518). "This is especially true when it comes to determining whether removable aliens must be released on bond during the pendency of removal proceedings." *Id.*

In short, the three *Mathews* factors weigh decidedly against granting Petitioner the additional, pre-detention hearing he now requests.

### B. Petitioner Fails To Show Cognizable, Irreparable Harm

In addition to his failure to show a likelihood of success on the merits, Petitioner does not establish that he will be irreparably harmed absent a TRO. The "unlawful deprivation of physical liberty" is a harm that "is essentially inherent in detention," and thus "the Court cannot weigh this strongly in favor of" Petitioner. *Lopez Reyes v. Bonnar*, No 18-cv-07429-SK, 2018 WL 7474861 at *10 (N.D. Cal. Dec. 24, 2018). It is also countervailed by authority mandating—and upholding—his categorical detention as lawful. Indeed, the alleged infringement of constitutional rights is insufficient where, as here, a petitioner fails to demonstrate "'a sufficient likelihood of success on the merits of [his] constitutional claims to warrant the grant of a preliminary injunction.'" *Marin All. For Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1160 (N.D. Cal. 2011) (quoting *Assoc'd Gen. Contractors of Cal., Inc. v. Coal for Econ. Equity*, 950 F.2d 1401,

---

[3] Courts in this district frequently cite to *Morrisey v. Brewer*, 408 U.S. 471 (1972), in support of their conclusion that aliens in similar circumstances to Petitioners are entitled to a pre-deprivation hearing. While the Supreme Court did find that post-arrest process should be afforded to the parolee in that case, the government respectfully submits that the framework for determining process for parolees is different from that for aliens illegally present in the United States. A fundamental purpose of the parole system is "to help individuals reintegrate into society" in order to lessen the chance of committing antisocial acts in the future. *See id.* at 478-80. That same goal of integration, in order to support the constructive development of individuals who have committed crimes and to lessen any recidivistic tendencies, is not present with unlawfully present aliens, who were not released for the same purpose.

1412 (9th Cir. 1991)); *Meneses v. Jennings*, No. 21-cv-07193-JD, 2021 WL 4804293, at *5 (N.D. Cal. Oct. 14, 2021) (denying TRO where petitioner "assume[d] a deprivation to assert the resulting harm"). Further, any alleged harm from detention alone is insufficient because "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523; *see also Flores*, 507 U.S. at 306; *Carlson*, 342 U.S. at 538. And as noted by the Ninth Circuit in *Rodriguez Diaz*, if treated as detention under § 1226(a), the risk of erroneous deprivation and value of additional process is small due to the procedural safeguards that Section 1226(a) provides. Thus, Petitioner cannot establish that his lawfully authorized mandatory detention would cause irreparable harm.

    **C.**    **Neither The Balance Of Equities Nor Public Interest Favor Petitioner**

When the government is a party, the balance of equities and public interest merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Further, where a moving party only raises "serious questions going to the merits," the balance of hardships must "tip sharply" in his favor. *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)).

Here, the government has a compelling interest in the steady enforcement of its immigration laws. *See Noem v. Vasquez Perdomo*, 606 U.S. —, 2025 WL 2585637, at *4-5 (2025) (Kavanaugh, J., concurring) (finding that balance of harms and equities tips in favor of the government in immigration enforcement given the "myriad 'significant economic and social problems' caused by illegal immigration"); *Demore*, 538 U.S. at 523; *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (holding that the court "should give due weight to the serious consideration of the public interest" in enacted laws); *see also Ubiquity Press v. Baran*, No 8:20-cv-01809-JLS-DFM, 2020 WL 8172983, at *4 (C.D. Cal. Dec. 20, 2020) ("the public interest in the United States' enforcement of its immigration laws is high"); *United States v. Arango*, CV 09-178 TUC DCB, 2015 WL 11120855, at 2 (D. Ariz. Jan. 7, 2015) ("the Government's interest in enforcing immigration laws is enormous"). Indeed, the government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J.) (citation omitted).

Petitioner's claimed harms cannot outweigh this public interest in the application of the law, particularly since courts "should pay particular regard for the public consequences in employing the

extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citation omitted). Recognizing the availability of an injunction under these circumstances would permit any "applicant for admission" subject to § 1225(b) to obtain additional review simply because he or she was released—even if that release is expressly conditioned on appearing at removal proceedings for *unlawful* entry—circumventing the comprehensive statutory scheme that Congress enacted. That statutory scheme —and judicial authority upholding it—likewise favors the government. While it is "always in the public interest to protect constitutional rights," if, as here, a petitioner has not shown a likelihood of success on the merits of her claim, that public interest does not outweigh the competing public interest in enforcement of existing laws. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The public and governmental interest in applying the established procedures for "applicants for admission," including their lawful, mandatory detention, *see* 8 U.S.C. § 1225(b); *Jennings*, 583 U.S. at 297, is significant.

## V. Conclusion

Petitioner's release pursuant to the *Zepeda Rivas* order was, by its terms, temporary, and only occurred as a result of the extraordinary challenges brought about by the COVID pandemic. The pandemic, and the term of Petitioner's temporary release, are now over. Petitioner's detention is mandated by § 1225(b). The Court should follow this statute. Accordingly, Respondents respectfully request that the Court deny the motion for a temporary restraining order and habeas petition.

Dated:     October 15, 2025                    Respectfully submitted,

                                                CRAIG H. MISSAKIAN
                                                United States Attorney

                                                */s/ Jevechius D. Bernardoni*
                                                JEVECHIUS D. BERNARDONI
                                                Assistant United States Attorney