ETAN NEWMAN, ESQ. (CA SBN 308728)
PANGEA LEGAL SERVICES
391 SUTTER ST., SUITE 500
SAN FRANCISCO, CA 94108
TEL. (415) 652-0907
FAX. (415) 593-5335
etan@pangealegal.org

*Pro Bono Attorney for Petitioner*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

███████████████████
a.k.a. ███████████████,

                  *Petitioner,*

v.

SERGIO ALBARRAN, Field Office Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; TODD M. LYONS, Acting Director of U.S. Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; and PAMELA BONDI, Attorney General of the United States,

                  *Respondents.*

Case No. 3:25-cv-8774-VC

**REPLY TO RESPONDENTS' OPPOSITION TO PETITIONER'MOTION FOR TEMPORARY RESTRAINING ORDER**

IMMIGRATION HABEAS CASE

I. **INTRODUCTION**

Petitioner ▮▮▮▮ ("Mr. ▮▮▮ submits this reply to briefly address Respondents' arguments in opposition to his motion for a Temporary Restraining Order ("TRO Motion"). Respondents detained Mr. ▮▮▮ at an in-person check-in, despite assurances that the check-in was not for the purposes of detention, and claimed he was being detained because of two failures to upload a photo to the BI SmartLINK application within the short 2-hour window. But given the chance, Respondents do not provide any evidence in support of that claim. Instead, they now claim Mr. ▮▮▮ was re-detained because of the sunset of the *Zepeda-Rivas* settlement and because the government's new interpretation of longstanding immigration statutes makes him subject to "mandatory detention." Dkt. 9. But regardless of the end of the *Zepeda-Rivas* litigation, Mr. ▮▮▮ maintains a liberty interest in his years-long freedom. And district courts have repeatedly rejected the government's counter-statutory argument that Mr. ▮▮▮ and anyone else who is present in the United States without admission is subject to mandatory detention. Regardless, Respondents have pointed to no reason that Mr. ▮▮▮ poses a flight risk or danger, and thus his continued incarceration is clearly arbitrary, unmoored from the only constitutionally-permissible purposes of civil immigration detention. The Court should order his immediate release.

II. **ARGUMENT**
 a. Mr. ▮▮▮ 5-Year Release Pursuant to a *Zepeda-Rivas* Bail Order Gives Him a Constitutionally-Protected Liberty Interest

Several district courts have already rejected the government's argument that the sunset of the *Zepeda-Rivas* settlement agreement means the government could reincarcerate those that this Court already found not to be a flight risk or danger with no process whatsoever. *See Duong*, 2025 U.S. Dist. LEXIS 185024 (granting PI and finding pre-deprivation hearing required for individual released in *Zepeda-Rivas* bail hearing); *Qazi v. Albarran*, No. 2:25-cv-02791-TLN-SCR, 2025 U.S. Dist. LEXIS 191922 (E.D. Cal., Sept. 29, 2025). As Judge Tigar explained in *Duong*, "while the [*Zepeda-Rivas*] settlement agreement has expired and no longer

1    mandates [Mr. ███████ release, neither can it reasonably be interpreted to waive or diminish
2    his rights…When the settlement expired, [Mr. ███████ was left with the rights afforded to him
3    by the immigration statutes and the Due Process Clause of the Fifth Amendment, which he now
4    asks this Court to adjudicate." *Duong*, 2025 U.S. Dist. LEXIS 185024. Indeed, the government
5    concedes that the settlement agreement specifically required ICE, after the agreement was over,
6    to abide by "generally applicable law and policy" for re-arrest and re-detention. Dkt. 9, at 3.
7    That generally-applicable law includes *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981), in
8    which the BIA held that ICE may not re-detain absent a material change in circumstances. The
9    government has pointed to no changed circumstances here showing that Mr. ███████ poses any
10   flight risk or danger.

11   Furthermore, even if Mr. ███████ had no expectation of remaining at liberty beyond the
12   three-year period of the settlement agreement, he *did* have an expectation that his removal
13   proceedings would have concluded by then. *See Duong*, 2025 U.S. Dist. LEXIS 185024.
14   Instead, despite three orders from an immigration judge granting him relief, the BIA has sat on
15   the government's appeal for more than five years, prolonging his vulnerability to detention. By
16   "cho[osing] to allow [Mr. ███████s proceedings to continue for five years while he reintegrated
17   into the community" the government has allowed him to develop a substantial liberty interest
18   that requires process before it is unilaterally revoked. *Duong*, 2025 U.S. Dist. LEXIS 185024.

19       **b. Mr. ███████ is Not an "Applicant for Admission" Subject to "Mandatory Detention" Under 8 U.S.C. § 1225(b)**
20
21   The government is also wrong that Mr. ███████ is an "applicant for admission" subject to
22   mandatory detention under 8 U.S.C. § 1225(b). Rather, as the government concedes, the last
23   time he was released under *Zepeda-Rivas*, Mr. ███████ was "detained pursuant to 8 U.S.C. §
24   1226(a)," and had a hearing before an immigration judge. Dkt. 9, at 2; *see also* Dkt. 6-9 (DHS
25   Custody Determination). The government has shown no reason that Mr. ███████ *re-*
26   *detention*—which it argues is simply a result of the sunset of the *Zepeda-Rivas* litigation—
27   would shift the government's detention authority.
28

1    Further, district courts have soundly rejected the government's newfangled argument, based on *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025), that all individuals present within the United States without admission are subject to mandatory detention under 8 U.S.C. § 1225(b), no matter how long they have been here. *See, e.g.*, *Salcedo Aceros*, No. 25-cv-06924-EMC, 2025 U.S Dist. LEXIS 179594 (N.D. Cal. Sept. 12, 2025). Those courts have found that the government's argument is irreconcilable with the plain text of § 1225 and § 1226, and would render recent amendments to § 1226(c) entirely redundant. *Id.*

In any event, even if Mr. ▇ is otherwise subject to "mandatory detention" as a statutory matter, that does not undermine his constitutional due process rights. As this Court previously concluded, a noncitizen otherwise subject to mandatory detention retains an strong interest in his continued liberty and is entitled to a hearing prior to re-detention. *See Barrenechea v. Albarran*, 2025 U.S. Dist. LEXIS 189726, at *2 (finding re-detention of individual subject to mandatory detention under § 1226(c) unlawful). The government's arguments about the detention authority are therefore entirely irrelevant; Mr. ▇ is still entitled to a hearing before he is redetained.

### c. The Government Shows No Interest in Detaining Mr. ▇ Who It Has Not Argued is a Current Flight Risk or Danger

Finally, despite contending that the government has a "strong interest" in detaining Mr. ▇ the government does not identify any actual interest his detention serves. The government has not contended that Mr. ▇ poses *any* flight risk or danger, the only two constitutionally permissible purposes for civil immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Thus, the government's continued detention of Mr. ▇ is entirely arbitrary, contrary to the Due Process Clause, and an unnecessary waste of public resources. *See Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004). Meanwhile, Mr. ▇ has been ripped away from his family without notice or any opportunity to contest the shifting bases that the government presents for his detention. The Court should end this unconstitutional and arbitrary deprivation of liberty and order Mr. ▇ immediate release.

III. **CONCLUSION**

For all the above reasons, and those stated in Mr. ████ TRO Motion, this Court should grant a TRO and order Mr. ████ release.

Dated: October 15, 2025                                 Respectfully submitted,

/s/ Etan Newman
Etan Newman
*Pro Bono* Attorney for Mr. ████

REPLY TO OPP. TO PETITIONER'S MOTION FOR TRO
No. 5:25-cv-8774-VC

4