CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7224
    Facsimile: (415) 436-6748
    jevechius.bernardoni@usdoj.gov

Attorneys for Respondents

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| ▉▉▉▉ ▉▉▉▉▉▉▉▉ ▉▉▉▉▉ ▉▉▉▉, | Civil No. 3:25-cv-08774-VC |
|---|---|
| Petitioner, | |
| vs. | **RESPONDENTS' RESPONSE TO ORDER TO SHOW CAUSE** |
| SERGIO ALBARRAN, *et al.*, | |
| Respondents. | |

**TABLE OF CONTENTS**

I. Introduction ........................................................................................................................1

II. Background ........................................................................................................................1

    A. Petitioner's Alleged Criminal History In El Salvador And Immigration History ......................................................................................................................1

    B. *Zepeda Rivas* Covid-19 Class Action And Petitioner's Release .........................2

    C. Post-*Zepeda Rivas* Proceedings ..........................................................................3

III. Legal Standard For Preliminary Injunctions .....................................................................4

IV. Argument ...........................................................................................................................4

    A. Petitioner Cannot Show A Likelihood Of Success On The Merits .....................4

        1. Because Petitioner's Release Under *Zepeda Rivas* Was Always Temporary, Petitioner's Due Process Claims Fail ......................................4

        2. Under the Plain Text Of 8 U.S.C. § 1225, Petitioner Must Be Detained Pending The Outcome Of His Removal Proceedings ................................7

        3. The *Mathews* Factors Do Not Apply, But Even If They Did, They Make Clear That No Additional Process Is Necessary .............................9

            (i) Petitioner's History And Status Reduce His Liberty Interest ....................10

            (ii) The Risk Of Erroneous Deprivation Is Minimal ......................................11

            (iii) The Government Has A Strong Interest In Detention Pending Removal ..........................................................................................12

        4. Petitioner Is Not Entitled To A Pre-Detention Hearing Under Section 1226(a) ........................................................................................12

    B. Petitioner Fails To Show Cognizable, Irreparable Harm ...................................13

    C. Neither The Balance Of Equities Nor Public Interest Favor Petitioner ............14

V. Conclusion .......................................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Abel v. United States*, 362 U.S. 217 (1960) ................................................................................ 12

*All. for Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ............................................... 14

*Assoc'd Gen. Contractors of Cal., Inc. v. Coal for Econ. Equity*, 950 F.2d 1401 (9th Cir. 1991) ................ 13

*Bastidas Mendoza v. Albarran*, No. 25-cv-08205-VC, Dkt. No. 14 (N.D. Cal. Oct. 10, 2025) ....................... 9

*Carlson v. Landon*, 342 U.S. 524 (1952) ..................................................................................... 13

*Dave v. Ashcroft*, 363 F.3d 649 (7th Cir. 2004) .......................................................................... 11

*Demore v. Kim*, 538 U.S. 510 (2003) ............................................................................ 10, 12, 13, 14

*Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) ............................................... 11, 12

*Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) .................................................................... 10

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) ................................................ 14

*Giorges v. Kaiser*, No. 5:25-cv-07683-NW (N.D. Cal. Oct. 10, 2025) at ECF No. 17 ................. 1, 6, 9

*Hernandez Nieves v. Kaiser*, No. 25-CV-06921-LB, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025) ............... 8

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) ............................................................................. 8, 15

*Jimenez Garcia v. Kaiser*, No. 4:25-cv-06916-YGR (N.D. Cal. Aug. 29, 2025) ............................... 8

*Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006 (9th Cir. 2017) ........................................ 8

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) ......................................................... 7

*Lopez Reyes v. Bonnar*, No 18-cv-07429-SK, 2018 WL 7474861 (N.D. Cal. Dec. 24, 2018) ............ 13

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012) ........................................................................... 4

*Ma v. Barber*, 357 U.S. 185 (1958) ............................................................................................. 11

*Marin All. For Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142 (N.D. Cal. 2011) ...................... 13

*Maryland v. King*, 567 U.S. 1301 (2012) ................................................................................... 14

*Mathews v. Diaz*, 426 U.S. 67 (1976) ......................................................................................... 10

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ................................................................................... 9

*Matter of Yajure Hurtado*, 29 I.&N. Dec. 216 (BIA 2025) ............................................................. 7, 8

*Meneses v. Jennings*, No. 21-cv-07193-JD, 2021 WL 4804293 (N.D. Cal. Oct. 14, 2021) .......... 13

*Morrisey v. Brewer*, 408 U.S. 471 (1972) ..................................................................................... 12

*Nken v. Holder*, 556 U.S. 418 (2009) ............................................................................................ 14

*Noem v. Vasquez Perdomo*, 606 U.S. —, 2025 WL 2585637 (2025) ........................................... 14

*Pena v. Hyde*, No. 25-cv-11983-NMG, 2025 WL 2108913 (D. Mass. July 28, 2025) ................. 11

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005) ................................................................... 15

*Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025) .............. 8

*Reno v. Flores*, 507 U.S. 292 (1993) ...................................................................................... 12, 13

*Rodriguez Diaz v. Garland*, 53 F.4th 1206 (9th Cir. 2022) ........................................... 9, 10, 12, 13

*Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025) .. 8

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) ............................................................ 14

*The Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008) ...................................................... 14

*Ubiquity Press v. Baran*, No 8:20-cv-01809-JLS-DFM, 2020 WL 8172983 (C.D. Cal. Dec. 20, 2020) ....... 14

*Uc Encarnacion v. Kaiser*, No. 22-cv-04369-CRB, 2022 WL 9496434 (N.D. Cal. Oct. 14, 2022) .... 6, 10

*United States v. Arango*, 09-CV-178 TUC DCB, 2015 WL 11120855 (D. Ariz. Jan. 7, 2015) .... 14

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ................................................................. 14

*Winter v. NRDC*, 555 U.S. 7 (2008) ................................................................................................ 4

*Wong Wing v. United States,* 163 U.S. 228 (1896) ....................................................................... 13

**Statutes**

8 U.S.C. § 1225 ........................................................................................................................ passim

8 U.S.C. § 1226 ........................................................................................................................ passim

I.  **Introduction**

Petitioner ▮▮▮▮▮▮▮▮▮▮ ("Petitioner") is a former class member of *Zepeda Rivas v. Jennings*, No. 20-cv-02731-VC, who was temporarily released by this Court as a result of the Covid-19 pandemic and resulting conditions of confinement.  In a thorough and well-reasoned decision, an Article III judge in this District recently found that the release of *Zepeda Rivas* class members was "the product of exigent circumstances" (*i.e.*, the Covid-19 "public health crisis"), and that such temporary release does not entitle the class members "to a liberty interest that they otherwise would not have had."  *Giorges v. Kaiser*, No. 5:25-cv-07683-NW (N.D. Cal. Oct. 10, 2025) at ECF No. 17 p.13-14.  The Honorable Noël Wise's *Giorges* analysis was correct, and this Court should come to the same result here:  Petitioner's temporary, Court-ordered release in the face of a public health crisis that no longer exists does not override the government's statutory right to detain Petitioner.  Petitioner thus cannot demonstrate that he is likely to succeed on his habeas claims.

II.  **Background**

   A.  **Petitioner's Alleged Criminal History In El Salvador And Immigration History**

Petitioner is a native and citizen of El Salvador.  Declaration of Jesse Cruz ("Cruz Decl.") ¶ 6. Criminal records from El Salvador reflect that Petitioner is a gang member with M-18, also known as the 18th Street Gang, who was arrested approximately six times in El Salvador for crimes including murder, disorderly conduct, firearms offenses, and illegal associations.  *Id.* ¶¶ 8-15 & Exs. 2-3. Petitioner entered the United States illegally in or around January 8, 2015; Border Patrol encountered him on that date in the Rio Grande Valley, Texas Border Patrol Sector, and Petitioner was placed in expedited removal status.  *Id.* ¶ 16 & Ex. 4.  Petitioner was provided a bond hearing on May 26, 2015 and was released from custody under a bond of $2,500.  *Id.* ¶ 20 & Ex. 5.

In December 2017, the government learned of Petitioner's alleged gang activity and criminal history in El Salvador.  *Id.* ¶ 22.  ERO then interviewed Petitioner regarding his alleged gang membership on February 5, 2018; Petitioner denied the allegations.  *Id.* ¶ 22 & Ex. 6.  However, as a

result of the criminal history documentation from El Salvador, Petitioner was classified as an 18th Street gang member and detained. *Id.* ¶ 22 & Exs. 3 & 7. On March 12, 2018, Petitioner participated in a full evidentiary hearing at which Petitioner was represented by counsel and given the opportunity to present evidence and testimony. *Id.* ¶ 24. Following that full evidentiary hearing, Immigration Judge Valerie A. Burch denied bond. *Id.* While Petitioner reserved appeal, he never filed an appeal of the bond denial decision. *Id.*

Petitioner subsequently filed a motion for custody redetermination, and an immigration judge scheduled a hearing for July 17, 2019. *Id.* ¶ 26 & Ex. 9. DHS then filed a motion for reconsideration, arguing that Petitioner had failed to establish a material change in circumstances. *Id.* ¶ 26 & Ex. 10. On July 18, 2019, Immigration Judge Joseph Y. Park denied Petitioner's motion for custody redetermination (*id.* ¶ 26 & Ex. 11), and Petitioner remained in custody at Yuba County jail until ordered released by this Court in the *Zepeda Rivas* lawsuit.

      **B.**    *Zepeda Rivas* **Covid-19 Class Action And Petitioner's Release**

As a result of his ongoing detention, Petitioner became a class member in *Zepeda Rivas v. Jennings*, No. 20-cv-02731-VC. *Zepeda Rivas* challenged the conditions of confinement at Mesa Verde and Yuba County jail resulting from the challenges of the pandemic, including the inability of detainees to socially distance and the lack of Covid-19 testing. On April 29, 2020, this Court provisionally certified a *Zepeda Rivas* class and instituted a process for considering release requests from detainees. Under the standard conditions of release, which were incorporated into every order granting release, the Court specifically ordered that: "[t]he Class Member's temporary release will expire upon the final adjudication of the habeas petition in this case[.]" *See Zepeda Rivas*, ECF Nos. 108 (Standard Conditions of Release), 369 (Revised Standard Conditions of Release). Petitioner was temporarily released pursuant to the *Zepeda Rivas* process on May 25, 2020. Cruz Decl. ¶ 27 & Ex. 12.

The parties in *Zepeda Rivas* subsequently entered into a settlement. *See Zepeda Rivas*, ECF Nos. 1205-1, 1229. The settlement agreement was heavily negotiated and extremely detailed. Under

RESPONSE TO ORDER TO SHOW CAUSE
No. 3:25-cv-08774-VC                                  2

the terms of the settlement agreement, ICE generally agreed to forgo re-detaining released class members for three years following approval of the settlement "unless they pose[d] a threat to public safety or national security, and/or risk of flight." *See Zepeda* Rivas, ECF No. 1205-1, at 13 (Subsection III.A). But these protections ended after three years, and the agreement specifically authorizes ICE to re-detain class members as before following the expiration of its three-year term:

> At the conclusion of the three-year period set forth in Subsection III.A, ICE's rearrest and re-detention practices for Class Members will occur pursuant to generally applicable law and policy.

*Id.* at 16 (Subsection III.G). While the agreement specified certain conditions for re-detention *during* the three-year period, *see id.* at 13–16, 18–19, it did not provide for any conditions, much less a pre-detention hearing requirement, for re-detention following the expiration of that term.

This Court approved the settlement on June 9, 2022. *See Zepeda Rivas*, ECF No. 1258. As such, class members, such as Petitioner, lost protection from re-detention on June 9, 2025, when the *Zepeda Rivas* settlement expired. *See* https://www.aclunc.org/our-work/legal-docket/zepeda-rivas-v-jennings-immigration-detention (notice that the *Zepeda Rivas* settlement expired on June 9, 2025).

### C.  Post-*Zepeda Rivas* Proceedings

Following his Court-ordered release by this Court, Petitioner was placed on the Intensive Supervision Appearance Program ("ISAP") - ATD. Cruz Decl. ¶ 28 & Ex. 13. The ISAP contractor reports a total of ten violations since Petitioner was placed on ISAP: two violations for tracker low battery, three violations for tracker missed callback, one violation for location services disabled, and four violations for missed biometric check-in. *Id.* ¶ 29 & Ex. 14. On October 14, 2025, Petitioner was ordered to report to the ISAP office due to multiple violations of the ATD program guidelines. *Id.* ¶ 30 & Ex. 15. On that date, Petitioner was taken into custody pursuant to INA § 235(b). *Id.*

Petitioner subsequently filed the above-captioned habeas petition (ECF No. 1) and filed a motion for temporary restraining order (ECF No. 6). The Court granted the temporary restraining order on October 15, 2025, ordered Petitioner be released, and ordered Respondents to show cause why a

preliminary injunction should not issue (ECF No. 11, "Order").

### III. Legal Standard For Preliminary Injunctions

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). The moving party must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

### IV. Argument

#### A. Petitioner Cannot Show A Likelihood Of Success On The Merits

##### 1. Because Petitioner's Release Under *Zepeda Rivas* Was Always Temporary, Petitioner's Due Process Claims Fail

By its terms, Petitioner's release as a member of the *Zepeda Rivas* class was always temporary and of finite duration. His initial release was subject to the mandatory, Court-ordered condition that it would "expire upon the final adjudication of the habeas petition in this case[.]" *See Zepeda Rivas*, ECF No. 369. Under the settlement agreement negotiated between the parties and applicable to all class members, including Petitioner, ICE was specifically authorized to re-detain class members as usual beginning three years following approval of the settlement. *See Zepeda Rivas* ECF No. 1205-1 at 16 (Subsection III(G)). The settlement was approved by the Court on June 9, 2022. *See Zepeda Rivas*, ECF No. 1258. As such, ICE was specifically authorized to re-detain temporarily released class members beginning June 9, 2025. ICE re-detained Petitioner on October 14, 2025, just four months after the *Zepeda Rivas* settlement agreement expired. Cruz Decl. ¶ 30. Accordingly, Petitioner never had a reasonable expectation that his release would continue indefinitely or that ICE would be restrained from re-detaining him after the three-year term ended.

In the Order granting the temporary restraining order here, the Court characterized the *Zepeda Rivas* settlement as "a voluntary decision by ICE not to re-detain ▮▮▮▮ for three years and a determination that he was not a flight risk or a danger to his community." Order at 2. Respondents

disagree with this interpretation—in response to Petitioner's bail submission in *Zepeda Rivas*, the government expressly argued that Petitioner was a danger to the community and a flight risk. *See Zepeda Rivas*, ECF No. 232-3. After the cursory briefing and truncated procedure established by the Court for *Zepeda Rivas* bail applications, and weighing the exigencies presented by the Covid-19 public health crisis, this Court ordered Petitioner released. *Zepeda Rivas*, ECF No. 250. But the Court's *Zepeda Rivas* custody determination review—which occurred solely on the papers—was, by necessity, not as detailed as the March 12, 2018 evidentiary hearing at which Petitioner was represented by counsel and given the opportunity to present evidence and testimony. Cruz Decl. ¶ 24. Following that evidentiary hearing, Immigration Judge Burch denied bond, and Petitioner did not appeal that decision. *Id.* As such, the government has consistently sought to detain Petitioner, and the *Zepeda Rivas* settlement thus does not reflect a "voluntary decision" not to detain Petitioner (Order at 2); the government instead was under a Court order to release Petitioner during the pendency of the *Zepeda Rivas* litigation. The settlement was a global resolution of that long-running litigation, representing a compromise solution but not reflecting any factual findings by Respondents. Indeed, the agreement expressly states that it "is not and shall not be offered as evidence of, or deemed evidence of, any admission of liability or fault on the part of Defendants, regarding any issue of law or fact, or regarding the truth or validity of any allegation or claim raised in this action." *Zepeda Rivas*, ECF No. 1205-1 at Sec. VII.D.

What the *Zepeda Rivas* settlement does demonstrate, however, is that the class members voluntarily declined to include any pre-detention procedures following the termination of the settlement term. The *Zepeda Rivas* class was represented by a team of lawyers, and the terms of the settlement agreement were rigorously negotiated. That agreement could have specified that detention following the three-year period would require a pre-detention hearing; it did not. No conditions whatsoever were imposed on DHS's ability to re-detain class members following the termination of the three-year term.

*See Zepeda Rivas*, ECF No. 1205-1, at 13–14, 18–19.  Judge Wise correctly endorsed this interpretation of the *Zepeda Rivas* settlement agreement, finding "[t]hat the settlement agreement had an expiration date indicates that Petitioners' release was, for all intents and purposes, temporary" and "Petitioners could not reasonably claim that the government promised them ongoing freedom so long as they complied with the terms of their conditional release." *Giorges*, No. 5:25-cv-07683-NW at ECF No. 17, p.13 (citation and quotation marks omitted, cleaned up).

This Court's Order distinguished *Uc Encarnacion v. Kaiser*, No. 22-cv-04369-CRB, 2022 WL 9496434, at *3 (N.D. Cal. Oct. 14, 2022), stating that the instant lawsuit is "more analogous to a case where the agency originally decides to release a noncitizen on the ground that they're not a danger or a flight risk, only to turn around years later and arrest them without any showing of changed circumstances." Order at 2.  Again, the government respectfully disagrees.  Here, once the government became aware of Petitioner's alleged criminal history in El Salvador, the government detained Petitioner and *never* voluntarily released him.  Cruz Decl. ¶ 22.  To the contrary, Petitioner was denied bail on two separate occasions by different immigration judges (*id.* ¶¶ 24, 26 & Exs. 8, 11), the government expressly opposed Petitioner's release in the *Zepeda Rivas* lawsuit (*Zepeda Rivas*, ECF No. 232-3), and the government released Petitioner only when ordered to do so by this Court (Cruz Decl. ¶ 27). Moreover, there unquestionably *are* changed circumstances here: the Covid-19 pandemic is over, and the *Zepeda Rivas* settlement agreement—along with the specifically negotiated limitations on re-detention detailed therein—expired on June 9, 2025.  Petitioner was taken into custody mere months later.  *Id.* ¶ 30.  Like the petitioner in *Uc Encarnacion*, this Petitioner's release has always been conditional, and Petitioner thus possess "a less 'weighty' liberty interest than most, and . . . the circumstances did not outweigh the weight of the authority and government interests favoring detention." *Giorges*, No. 5:25-cv-07683-NW at ECF No. 17, p.13 (discussing *Uc Encarnacion*, 2022 WL 9496434, at *3).

### 2. Under the Plain Text Of 8 U.S.C. § 1225, Petitioner Must Be Detained Pending The Outcome Of His Removal Proceedings

In addition to the government's ability to re-detain Petitioner without a pre-deprivation bond hearing under the *Zepeda Rivas* settlement, Petitioner is an "applicant for admission" due to his presence in the U.S. without having been either "admitted or paroled." Such aliens are subject to the mandatory detention framework of 8 U.S.C. § 1225(b) that specifically applies to them.

Recent BIA authority confirms that Petitioner is subject to mandatory detention under § 1225(b). In *Matter of Yajure Hurtado*, 29 I.&N. Dec. 216 (BIA 2025), the BIA held that, based on the plain text of the statute, an alien who entered without inspection remains an "applicant for admission" who is "seeking admission," and is therefore subject to mandatory detention without a bond hearing, even if that alien has been present in the U.S. for years. *Id.*, slip op. at 220. Thus, the BIA also held that IJs lack authority to hold bond hearings for aliens in such circumstances. *Id.* The BIA considered, and rejected, the individual's argument that the government's "'longstanding practice' of treating aliens who are present in the United States without inspection as detained under []8 U.S.C.A. § 1226(a), and therefore eligible for a bond." *Id.* at 225. Citing the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the BIA explained that such a practice could be relevant where the statute is "doubtful and ambiguous," but here, "the statutory text of the INA . . . is instead clear and explicit in requiring mandatory detention of all aliens who are applicants for admission, without regard to how many years the alien has been residing in the United States without lawful status." *Hurtado*, slip op. at 226. The BIA has therefore now confirmed, in a decision binding on IJs nationwide, what the government is arguing here: individuals such as Petitioner are "applicants for admission" subject to mandatory detention under § 1225(b) and have no right to a bond hearing.

Respondents recognize that recent district court preliminary injunction decisions have concluded that § 1225(b) is not applicable to aliens who were conditionally released in the past under § 1226(a).[1] But

---

[1] *See, e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug.

RESPONSE TO ORDER TO SHOW CAUSE
No. 3:25-cv-08774-VC                                             7

Petitioner here was not voluntarily and conditionally released by DHS—he was subject to the unique, pandemic-specific process created by *Zepeda Rivas*, which terminated upon the expiration of the settlement agreement term. Moreover, these non-binding decisions do not grapple with the textual argument that the BIA just held was "clear and explicit." *Hurtado*, slip op. at 226. Taken together, the plain language of §§ 1225(a) and 1225(b) indicate that applicants for admission, including those "present" in the U.S.—like Petitioner—are subject to mandatory detention under Section 1225(b). When there is "an irreconcilable conflict in two legal provisions," then "the specific governs over the general." *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1015 (9th Cir. 2017). While § 1226(a) applies generally to aliens who are "arrested and detained pending a decision on" removal, § 1225 applies more narrowly to "applicants for admission"—*i.e.*, aliens present in the U.S. who have not been admitted. Because Petitioner falls within this latter category, the specific detention authority under § 1225 controls over the general authority found at § 1226(a).

As an alien subject to mandatory detention under § 1225(b), Petitioner is not entitled to custody redetermination hearings at any time, whether pre- or post-detention. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."); *Hurtado*, slip op. at 229 (holding that immigration judge "lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A)"). Petitioner remains an alien who is amenable to expedited removal and subject to mandatory detention due to his presence in the United States without having been either "admitted or paroled" or physically present in the United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility.

The Court's Order found that Petitioner is not subject to mandatory detention under Section 1225,

---

21, 2025); *Jimenez Garcia v. Kaiser*, No. 4:25-cv-06916-YGR (N.D. Cal. Aug. 29, 2025); *Hernandez Nieves v. Kaiser*, No. 25-CV-06921-LB, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025).

RESPONSE TO ORDER TO SHOW CAUSE
No. 3:25-cv-08774-VC                                       8

holding that it "rejected that argument in *Bastidas Mendoza v. Albarran*, No. 25-cv-08205-VC, Dkt. No. 14 (N.D. Cal. Oct. 10, 2025), and the same reasoning applies here." Order at 2-3. But the Section 1225 analysis in *Bastidas Mendoza* was premised on the Court's finding that "[r]egardless of which immigration statute applies to the petitioners, the petitioners have a liberty interest in remaining free from detention that has developed as a result of the government releasing the petitioners from detention on their own recognizance." *Bastidas Mendoza*, ECF No. 14 at 1. But those are not the facts of this case—once the government learned that Petitioner was an alleged gang member in El Salvador, the government *never* voluntarily released Petitioner; this Court's *Zepeda Rivas* release order was the only reason that Petitioner was out of custody prior to these habeas proceedings; and after this Court ordered his release, the government consistently imposed limitations on Petitioner's freedom. Cruz Decl. ¶¶ 22-29. Just as in *Giorges*, "[p]resumably, had the exigent circumstances caused by the pandemic not occurred, [Petitioner] would have remained in detention." *Giorges*, No. 5:25-cv-07683-NW at ECF No. 17, p.13.

In short, Petitioner is subject to mandatory detention under Section 1225(b).

### 3. The *Mathews* Factors Do Not Apply, But Even If They Did, They Make Clear That No Additional Process Is Necessary

Although Petitioner urges this Court to evaluate this case under the traditional *Mathews* factors, a *Mathews* analysis is not appropriate here, where the terms of Petitioner's release make clear that no additional process is necessary. In the event the Court elects to analyze Petitioner's claim under *Mathews*, the Court should find that Petitioner is not entitled to relief. Under *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), courts consider three factors in evaluating a procedural due process claim: the plaintiff's private interest, the risk of erroneous deprivation without additional procedures, and the government's interest. While leaving open the question of whether the *Mathews* test applies to a constitutional challenge to discretionary immigration detention, *see Rodriguez Diaz*, 53 F.4th at 1207, the Ninth Circuit has emphasized that "*Mathews* remains a flexible test that can and must account for the

heightened governmental interest in the immigration detention context." *Id.* at 1206.² Against this backdrop, the three factors weigh against the additional process Petitioner requests here.

### (i) Petitioner's History And Status Reduce His Liberty Interest

As discussed above, while Petitioner, like any individual facing detention, has an interest in remaining released, the circumstances of his release do not give rise to a protectible liberty interest warranting additional process. To the extent he has a liberty interest here, that interest is reduced by the fact that he is an alien in removal proceedings. *See Rodriguez Diaz*, 53 F.4th at 1206 ("The recognized liberty interests of U.S. citizens and aliens are not coextensive: the Supreme Court has 'firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens.'") (quoting *Demore v. Kim*, 538 U.S. 510, 522 (2003)). As the Supreme Court has explained, "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976). Indeed, the Supreme Court has repeatedly "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. That is especially true in light of Petitioner's particular circumstances, as an alien subject to mandatory detention who knew that his temporary release due to extraordinary circumstances would not be permanent. These aspects of Petitioner's situation greatly reduce his liberty interest. *See Rodriguez Diaz*, 53 F.4th at 1206–08; *cf. Uc Encarnacion*, 2022 WL 9496434, at *4 (finding the petitioner's liberty interest less weighty than that of a Section 1226(a) detainee) (citing *Diouf v. Napolitano*, 634 F.3d 1081, 1086–87 (9th Cir. 2011)).

---

² As the Ninth Circuit recognized in *Rodriguez Diaz*, "the Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1206 (9th Cir. 2022) (citations omitted). Whether the *Mathews* test applies in this context is an open question in the Ninth Circuit. *See Rodriguez Diaz*, 53 F.4th at 1207 (applying *Mathews* factors to uphold constitutionality of Section 1226(a) procedures in a prolonged detention context; "we assume without deciding that *Mathews* applies here").

RESPONSE TO ORDER TO SHOW CAUSE
No. 3:25-cv-08774-VC                                           10

### (ii) The Risk Of Erroneous Deprivation Is Minimal

Second, there is no risk of erroneous deprivation of Petitioner's liberty here because Petitioner is subject to mandatory detention under Section 1225(b). Any deprivation of liberty, therefore, would not be *erroneous*: Congress has mandated that individuals such as Petitioner be subject to mandatory detention, without a pre-deprivation detention hearing, and without regarding to evidence of their risk of flight or danger to the community. 8 U.S.C. § 1225(b)(2).

In any event, applicants for admission like Petitioner, who was not admitted or paroled into the country, lack a liberty interest in *additional* procedures including a custody redetermination or pre-detention bond hearing. Petitioner's status does not provide him with additional rights above and beyond the specific process already provided by Congress in § 1225. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border'"); *Ma v. Barber*, 357 U.S. 185, 190 (1958) (concluding that the parole of an alien released into the country while admissibility decision was pending did not alter her legal status); *Pena v. Hyde*, No. 25-cv-11983-NMG, 2025 WL 2108913, at *2 (D. Mass. July 28, 2025) (finding that mandatory detention under § 1225(b)(2)(A) of an alien arrested at a traffic stop in the interior of the United States "comports with due process"). Indeed, for "applicants for admission" who are amenable to § 1225(b)(1)—*i.e.*, because they were not physically present for at least two years on the date of inspection, 8 U.S.C. § 1225(b)(1)(A)(iii)(II)—"[w]hatever the procedure authorized by Congress . . . is due process," whether or not they are apprehended at the border or after entering the country. *Thuraissigiam*, 591 U.S. at 138–139 ("This rule would be meaningless if it became inoperative as soon as an arriving alien set foot on U.S. soil."). These aliens have "only those rights regarding admission that Congress has provided by statute." *Id.* at 140; *see Dave v. Ashcroft*, 363 F.3d 649, 653 (7th Cir. 2004). Petitioner is entitled only to the protections set forth by statute, and "the Due Process

Clause provides nothing more." *Thuraissigiam*, 591 U.S. at 140.[3]

### (iii) The Government Has A Strong Interest In Detention Pending Removal

Turning to the third *Mathews* factor, the Ninth Circuit has held that "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore*, 538 U.S. at 518). "This is especially true when it comes to determining whether removable aliens must be released on bond during the pendency of removal proceedings." *Id.*

In short, the three *Mathews* factors weigh decidedly against granting Petitioner the additional, pre-detention hearing he now requests.

### 4. Petitioner Is Not Entitled To A Pre-Detention Hearing Under Section 1226(a)

Even if this Court finds that § 1226(a) applies here, Petitioner still would not be entitled to a pre-detention hearing. For aliens detained under § 1226(a), "an ICE officer makes the initial custody determination" *post*-detention, which the alien can later request to have reviewed by an IJ. *Rodriguez Diaz*, 53 F.4th at 1196. The Supreme Court has long upheld the constitutionality of the basic process of immigration detention. *Reno v. Flores*, 507 U.S. 292, 309 (1993) (rejecting procedural due process claim that "the INS procedures are faulty because they do not provide for automatic review by an immigration judge of the initial deportability and custody determinations"); *Abel v. United States*, 362 U.S. 217, 233–34 (1960) (noting the "impressive historical evidence of acceptance of the validity of statutes providing for administrative deportation arrest from almost the beginning of the Nation"); *Carlson v. Landon*, 342 U.S.

---

[3] Courts in this district frequently cite to *Morrisey v. Brewer*, 408 U.S. 471 (1972), in support of their conclusion that aliens in similar circumstances to Petitioners are entitled to a pre-deprivation hearing. While the Supreme Court did find that post-arrest process should be afforded to the parolee in that case, the government respectfully submits that the framework for determining process for parolees is different from that for aliens illegally present in the United States. A fundamental purpose of the parole system is "to help individuals reintegrate into society" in order to lessen the chance of committing antisocial acts in the future. *See id*. at 478-80. That same goal of integration, in order to support the constructive development of individuals who have committed crimes and to lessen any recidivistic tendencies, is not present with unlawfully present aliens, who were not released for the same purpose.

RESPONSE TO ORDER TO SHOW CAUSE
No. 3:25-cv-08774-VC                          12

524, 538 (1952) ("Detention is necessarily a part of this deportation procedure."); *Wong Wing v. United States,* 163 U.S. 228, 235 (1896) ("We think it clear that detention or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens, would be valid."). Thus, under Section 1226(a), aliens are not guaranteed *pre*-detention review and may instead only seek review of their detention by an ICE official once they are in custody—a process that the Ninth Circuit has found constitutionally sufficient in the prolonged-detention context. *Rodriguez Diaz*, 53 F.4th at 1196–97.[4]

### B. Petitioner Fails To Show Cognizable, Irreparable Harm

In addition to his failure to show a likelihood of success on the merits, Petitioner does not establish that he will be irreparably harmed absent a TRO. The "unlawful deprivation of physical liberty" is a harm that "is essentially inherent in detention," and thus "the Court cannot weigh this strongly in favor of" Petitioner. *Lopez Reyes v. Bonnar*, No 18-cv-07429-SK, 2018 WL 7474861 at *10 (N.D. Cal. Dec. 24, 2018). It is also countervailed by authority mandating—and upholding—Petitioner's categorical detention as lawful. Indeed, the alleged infringement of constitutional rights is insufficient where, as here, a petitioner fails to demonstrate "'a sufficient likelihood of success on the merits of [his] constitutional claims to warrant the grant of a preliminary injunction.'" *Marin All. For Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1160 (N.D. Cal. 2011) (quoting *Assoc'd Gen. Contractors of Cal., Inc. v. Coal for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991)); *Meneses v. Jennings*, No. 21-cv-07193-JD, 2021 WL 4804293, at *5 (N.D. Cal. Oct. 14, 2021) (denying TRO where petitioner "assume[d] a deprivation to assert the resulting harm"). Further, any alleged harm from detention alone is insufficient because "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523; *see also Flores*, 507 U.S. at 306; *Carlson*, 342 U.S. at 538. And as noted by the Ninth Circuit in *Rodriguez*

---

[4] Although *Rodriguez Diaz* did not arise in the pre-detention context, the Ninth Circuit noted that the petition argued that the Section 1226(a) framework was unlawful "'for any length of detention'" and concluded that the challenge to Section 1226(a) failed "whether construed as facial or as-applied challenges to § 1226(a)." *Rodriguez Diaz*, 53 F.4th at 1203.

*Diaz*, if treated as detention under § 1226(a), the risk of erroneous deprivation and value of additional process is small due to the procedural safeguards that Section 1226(a) provides. Thus, Petitioner cannot establish that his statutorily authorized mandatory detention would cause irreparable harm.

### C. Neither The Balance Of Equities Nor Public Interest Favor Petitioner

When the government is a party, the balance of equities and public interest merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Further, where a moving party only raises "serious questions going to the merits," the balance of hardships must "tip sharply" in his favor. *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)).

Here, the government has a compelling interest in the steady enforcement of its immigration laws. *See Noem v. Vasquez Perdomo*, 606 U.S. —, 2025 WL 2585637, at *4-5 (2025) (Kavanaugh, J., concurring) (finding that balance of harms and equities tips in favor of the government in immigration enforcement given the "myriad 'significant economic and social problems' caused by illegal immigration"); *Demore*, 538 U.S. at 523; *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (holding that the court "should give due weight to the serious consideration of the public interest" in enacted laws); *see also Ubiquity Press v. Baran*, No 8:20-cv-01809-JLS-DFM, 2020 WL 8172983, at *4 (C.D. Cal. Dec. 20, 2020) ("the public interest in the United States' enforcement of its immigration laws is high"); *United States v. Arango*, 09-CV-178 TUC DCB, 2015 WL 11120855, at *2 (D. Ariz. Jan. 7, 2015) ("the Government's interest in enforcing immigration laws is enormous"). Indeed, the government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J.) (citation omitted).

Petitioner's claimed harms cannot outweigh this public interest in the application of the law, particularly since courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citation omitted). Recognizing the availability of an injunction under these circumstances would permit any

RESPONSE TO ORDER TO SHOW CAUSE
No. 3:25-cv-08774-VC                                        14

"applicant for admission" subject to § 1225(b) to obtain additional review simply because he or she was released, thereby circumventing the comprehensive statutory scheme that Congress enacted. That statutory scheme —and judicial authority upholding it—likewise favors the government. While it is "always in the public interest to protect constitutional rights," if, as here, a petitioner has not shown a likelihood of success on the merits of his claim, that public interest does not outweigh the competing public interest in enforcement of existing laws. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The public and governmental interest in applying the established procedures for "applicants for admission," including their lawful, mandatory detention, *see* 8 U.S.C. § 1225(b); *Jennings*, 583 U.S. at 297, is significant.

**V.     Conclusion**

Petitioner's release pursuant to the *Zepeda Rivas* order was, by its terms, temporary, and only occurred as a result of the extraordinary challenges brought about by the Covid-19 pandemic. The pandemic, and the settlement agreement governing the terms of Petitioner's temporary release, are now over. Further, Petitioner's detention is mandated by § 1225(b). Accordingly, Respondents respectfully request that the Court decline to issue a preliminary injunction and deny the habeas petition.

Dated:         October 21, 2025                                   Respectfully submitted,

                                                                                   CRAIG H. MISSAKIAN
                                                                                   United States Attorney

                                                                                   */s/ Jevechius D. Bernardoni*
                                                                                   JEVECHIUS D. BERNARDONI
                                                                                   Assistant United States Attorney